MARK MCPHETERS *vs.* MOOSE RIVER LOG DRIVING COMPANY.

Piscataquis.    Opinion June 30, 1886.

*Waters.  Floatable streams.  Log Driving.  Reasonable use.  Damages.*

Where one deliberately and without compulsion selects a particular portion of a floatable stream for the storage of logs, and thereby prevents another from entering such common highway with a drive of logs from a tributary stream, he is liable to such other person for the damages occasioned thereby.

Wages and board of men while waiting for a reasonable time would be an element of damage; so too, would the expense of moving one crew out and another in, as well as the increased cost, if any, of making the drive the next season, and the interest on the contract price for making the drive during such time as the payment thereof was delayed, because of inability to complete the drive on account of such obstruction.

The loss of supplies left in the woods for use when completing the drive, and destroyed by wild beasts, would not constitute an element of damage.

ON REPORT.

An action of the case for obstructing the drive of the plaintiff on Tom Fletcher brook in the spring of 1881. The opinion states the case.

The report provided that the law court should render judgment according to the law of the case ; and it also provided as follows : "If judgment be for plaintiff the court may declare the principles upon which damages are to be assessed, and such assessment shall be at *nisi prius.* The court in its discretion may declare the principles of law governing the case, and send the case back for trial by a jury."

*Henry Hudson,* for the plaintiff, cited, upon the right of passage : *Brown* v. *Chadbourne,* 31 Maine, 9 ; *Veazie* v. *Dwinel,* 50 Maine, 484 ; *Knox* v. *Chaloner,* 42 Maine, 155 ; Gould, Waters, § § 95-97 ; *Davis* v. *Winslow,* 51 Maine, 297 ; *Lancey*

v. *Clifford*, 54 Maine, 489 ; *Pearson* v. *Rolfe*, 76 Maine, 384 ; *Parks* v. *Morse*, 52 Maine, 260. Obstructions in floatable streams are nuisances. *Arundel* v. *McCulloch*, 10 Mass. 70 ; *Gerrish* v. *Brown*, 51 Maine, 262 ; *Brown* v. *Watson*, 47 Maine, 163 ; *Brown* v. *Black*, 43 Maine, 443. A person injured by a public nuisance entitled to damages. Cooley, Torts, 618 ; *Dudley* v. *Kennedy*, 63 Maine, 465 ; *Stetson* v. *Faxon*, 19 Pick. 147 and other cases above cited. Upon the effect of the defendant's charter counsel cited : *Plummer* v. *Penobscot Lumbering Association*, 67 Maine, 367 ; Gould, Waters, § 35 ; *Com.* v. *Breed*, 4 Pick. 463.

*A. G. Lebroke* and *W. E. Parsons*, for defendant.

The damages are too remote, and when damages in matters not necessarily resulting are claimed, they must be set out in the writ and established by proofs. Sedgwick on Damages, 65, 66 (4 ed.). They cannot be recovered unless proximate even if claimed in the writ. *Ibid. ; Armstrong* v. *Percy*, 5 Wend. 536.

It may well be doubted whether any damages, not naturally resulting from an alleged grievance, can ever be considered proximate, or whether they can be taken into consideration at all by the tribunal. Sedgwick on Dam. 65, 66. No damages can be claimed for the loss of a collateral contract. *Bridges* v. *Stickney*, 38 Maine, 361.

If one by tort delay a vessel so that expense occurs to get her off, defendant is liable only for the expense of getting her off, but not for the delay of a voyage. *Benson* v. *Malden*, 6 Allen, 149 ; *Fuller* v. *Chicopee Manuf'g Co.* 16 Gray, 46. Speculative damages are not allowed. Gould on Waters, 212, and notes.

Damages are given as compensation, recompense or satisfaction to the plaintiff, for the injury actually received ; and they must be the natural and proximate consequence of the act complained of. *Longfellow* v. *Quimby*, 29 Maine, 196 ; *Worcester* v. *Great Falls Manuf'g Co.* 41 Maine, 159 ; *Ingledew* v. *Northern R. R.* 7 Gray, 86 ; *Shaw* v. *Boston and Worcester Railroad*, 8 Gray, 45 ; *Furlong* v. *Polleys*, 30 Maine, 491 ; *Bridges* v. *Stickney*, 38 Maine, 391 ; *Loker* v. *Damon*, 17 Pick. 284 ; *Sibley* v.

*Hoar,* 4 Gray, 222; *Goddard* v. *Barnard,* 16 Gray, 205; *Emery* v. *Vinall,* 26 Maine, 295; *Smith* v. *Grant,* 56 Maine, 255; *Winslow* v. *Lane,* 63 Maine, 161; *Ripley* v. *Mosely,* 57 Maine, 76; *Wing* v. *Chase,* 35 Maine, 260; *Waite* v. *Gilbert,* 10 Cush. 177; *Thompson* v. *Shattuck,* 2 Met. 615; *Barnard* v. *Poor,* 21 Pick. 378; *Noble* v. *Ames Manuf'g Co.* 112 Mass. 492; *Noxon* v. *Hill,* 2 Allen, 215.

If the damages sustained are not the necessary consequence of the act complained of, they can be recovered only when specially set forth in the declaration and proved on trial. *Furlong* v. *Polleys,* 30 Maine, 491; *Patten* v. *Libbey,* 32 Maine, 378; *Dickinson* v. *Boyle,* 17 Pick. 78; *Baldwin* v. *Western R. R.* 4 Gray, 333; *Knapp* v. *Slocomb,* 9 Gray, 73; *Hunter* v. *Stewart,* 47 Maine, 419; *Adams* v. *Barry,* 10 Gray, 361; *Parker* v. *Lowell,* 11 Gray, 353; *Rising* v. *Granger,* 1 Mass. 47.

The charter of the defendant corporation is radically different from the charter of Penobscot Log Driving Company referred to in Weymouth against that company, 71 Maine, 29. McPheters *pro hac vice* may be regarded the owner. *Tibbets* v. *Tibbets,* 46 Maine, 365.

The act of an employee outside his special duty is not the act of the company. *Gardner* v. *Boston and Maine R. R. Co.* 70 Maine, 181.

EMERY, J. From the evidence we gather the following facts: Moose River rising in the mountains near the Canada line, and gathering the waters of numerous tributaries, flows easterly through Long Pond, Little Brassua Lake, Great Brassua Lake, and into Moosehead Lake, nearly opposite Mt. Kineo. The distance from Long Pond down to Little Brassua is some four miles, and for that space the river flows over rapids. From Little Brassua down to Great Brassua is some four miles of nearly dead water. Across Great Brassua Lake to its outlet is about three and one-half miles, and from there to Moosehead Lake is about four miles.

About two and one-half miles above Great Brassua, a stream called the " Tom Fletcher Brook," flows into Moose River from

the north.   Both "Tom Fletcher" stream and Moose River are floatable streams and public highways for the passage of logs.

The defendant corporation, by c. 179 of special laws of 1879, was incorporated to "drive all logs and other timber, coming into said Moose River between Moose River Bridge (above Long Pond,) and Moosehead Lake, for the purpose of being driven to market," &c.   The corporation was authorized to "erect booms and dams where the same may be lawfully done, and to use steam and other power for the purpose of towing logs and booms."   The charter does not state how far the corporation must drive the logs, but it gives authority to drive them to market, which would be down the Kennebec river.   In fact, however, the corporation in the first two years of existence, had only driven logs into Moosehead Lake, and there turned them over to another company to be towed.

In September, 1880, the plaintiff took a contract to cut and haul logs into the "Tom Fletcher," and to drive them down the "Tom Fletcher" *into* Moose River.   In the following October he began operations in the woods under this contract.   At this time Moose River was substantially clear of logs from Long Pond to Great Brassua Lake.   Between Great Brassua and Moosehead there were some three million feet of left over logs. This condition of the river was noted by the plaintiff.   There had also been left over above the Long Pond rapids some twelve million feet or more, and in the fall of 1880, after the plaintiff had gone into the woods, the defendant drove these logs down. They did not drive them into Moosehead Lake, as they could have done, but swung a boom across Moose River at its outlet into Great Brassua, — drove the logs down against that boom, entirely filling the river with them up some distance above the outlet of the "Tom Fletcher," and there left them for the winter.

In the spring of 1881, the plaintiff with his drive of logs arrived at the outlet of the "Tom Fletcher" before the spring drive on the Moose River, under the care of the defendants had arrived at the same point.   Had it not been for the storage of the logs in the river above Great Brassua, by the defendants the previous fall, the plaintiff could have turned his logs into Moose

River, and so fully performed his contract. As it was, the plaintiff found the river full of old logs, with no space to receive his logs. In a few days the spring drive of the Moose River, some fifty million feet, came down against the old logs, and before the drive passed the " Tom Fletcher," the driving season was over, and the plaintiff's logs were stranded in the "Tom Fletcher."

The defendants had as much right as the plaintiff to use Moose River for driving purposes. If they fairly occupied the river first with their logs, they could claim precedence, and the plaintiff would need wait, provided they used reasonable diligence and efforts to propel their drive. They were under no obligation to hold up and let the plaintiff put his logs in ahead, or even in the midst of their drive. If the plaintiff reached the river later than the defendants, he would be obliged to wait, and his loss would be *damnum absque injuria.* If the defendants in such case used reasonable diligence and efforts, they would not be responsible, even though they made temporary delays for purposes of booming, &c.

But the defendants the fall before, had deposited logs, in this particular part of the river opposite the " Tom Fletcher " stream, for storage during the winter. These logs were not stranded at this place for want of water. They could have been driven past the " Tom Fletcher," but this locality was selected by the defendants as the most convenient place for the storage of the logs. It was not the Moose River spring drive, that by arriving first, occupied the space. What prevented the plaintiff putting his logs into Moose River, was not the use of the river at that point by the defendants for driving purposes, but their use of it for storage purposes.

As we have before said, temporary delays and rests may be justifiable in the driving of logs, if they are not unreasonable in time or place. But when parties deliberately and without compulsion by nature select a particular portion of a river as a place for a season's storage of their logs, and thus completely block up another's entrance into the common highway, we think they are exceeding their right, and are legally liable for damages

thereby caused.   Parties desiring to use any part of a river for such storage, should select such places as will least obstruct others in their use of the river.   The defendants here must have known that logs would be likely to come down the " Tom Fletcher " early the following spring, and require entrance into Moose River.   They should not have stored their old logs across the mouth of the " Tom Fletcher " if any other place could have been found.

In this case it is urged that there was no other place where the left over logs could have been safely kept during the winter. It was, perhaps, the most convenient place, but the evidence does not satisfy us that it was the only safe place.   We think the logs could, with some extra care and expense, perhaps, have been safely stored where they would not have obstructed the " Tom Fletcher " stream.   As it was, three million feet of logs were left between Brassua and Moosehead Lakes, and no harm is shown to have come to them.

After careful consideration of the evidence, we think the plaintiff is entitled to recover upon the grounds above indicated. He is then entitled to such damages as are the natural and necessary results of the acts and omissions of the defendant, which we have found to be unreasonable.

The wages and board of his men while thus detained would be an element of damage.   He could not, however, employ an unnecessary number of men, nor keep them under pay after it became evident they could not be utilized that season.   It is only for a reasonable number, and a reasonable time that he could recover.

As the acts or omissions of the defendant compelled the plaintiff to move his men out of the woods, without accomplishing their work, and move them back again the next season, an expense he would not otherwise have incurred, we think such expense would be an element of damage.

The final payment on the contract was due in June, but the plaintiff was prevented by the defendant from earning it till the next May.   The loss of interest on such payment, during such enforced delay, would seem to be an item of damage.

The loss of the provisions, clothing, &c., left behind in the woods, is, we think, too remote. These articles might have been taken from the woods, though at some expense, but the plaintiff chose to leave them, and they were destroyed by animals and the weather. Their destruction was from a nearer cause than the defendant's acts.

The increased cost, if any, of moving the logs in the spring of 1882, over that of moving them the first spring, would, perhaps, be an element of damage, if clearly shown to result from the defendant's acts. The evidence before us, however, does not make it sufficiently certain what of the increased cost was owing to the defendant's acts. Should the case go to a jury for the assessment of damages, such evidence can be put in.

The plaintiff, since the report was made up, has filed a stipulation to abide by the court's assessment of damages, in order to end the case, and we assess damages as follows: For loss of time and expenses of plaintiff and his men, while waiting to put the logs into Moose River the first season, say seventeen men for six days, at two dollars and seventy-five cents each per day, for wages and board, two hundred eighty dollars and fifty cents. For interest on the delayed payment of twelve hundred dollars for eleven months, sixty-six dollars. For the extra expense of moving one crew out, and another crew into the woods the following spring, say one hundred dollars; in all, four hundred forty-six dollars and fifty cents, with interest from the date of the writ. The entry should be,

> *Judgment for the plaintiff. Damages to be assessed by a jury at nisi prius upon the principles above stated, unless the defendant within twenty days after filing of this rescript elect to abide by the assessment made by the court herein. If the defendant so elect, the judgment to be for $446.50, with interest from the date of the writ.*

PETERS, C. J., DANFORTH, VIRGIN and FOSTER, JJ., concurred. HASKELL, J., concurred in the result.