CHARLES PAGE *et al. vs.* MILLE LACS LUMBER CO.

Argued May 2, 1893. Reversed June 12, 1893.

**Redress for Private Injury from Public Nuisance.**

A nuisance, such as an unreasonable and unnecessary obstruction of a navigable stream, may be public in its general effect upon the public, and at the same time private as to those individuals who suffer a special and particular damage therefrom, distinct and apart from the common injury.

**Streams Navigable for Floating Logs Governed by Rules for Highways.**

Persons using such streams for the driving of logs must do so with due deference to the rights of other parties engaged in the same business, and in most respects such streams are governed by the same rules as are highways upon land.

**Facts Stated—Showing Special Injury.**

Plaintiffs were engaged in driving logs of their own, and, under contract, logs belonging to other persons, down a navigable stream, to their own mill and to market, having to pass through defendant's mill ponds and by its mill, its booms, and sorting gaps. There was testimony introduced upon the trial tending to show that by means of its ponds and booms, and the manner in which its own logs were handled and placed in storage booms, defendant maintained a nuisance in its mill ponds, and unreasonably and unnecessarily obstructed and delayed plaintiffs' driving operations. *Held,* that the latter had shown special injuries differing in kind, not merely in degree or extent, from those suffered by the general public.

On Motion for Rehearing. July 19, 1893.

**A Return by the Inferior Court is Necessary to Give This Court Jurisdiction.**

Where it appears that the hearing of an appeal was on what purported to be a return from the district court, but that in fact no return had been made, the order entered on such hearing will be set aside, as the court had no jurisdiction.

Appeal by plaintiffs, Charles Page and E. S. Page, from an order of the District Court of Mille Lacs County, *D. B. Searle,* J., made September 8, 1892, denying their motion for a new trial.

The plaintiffs are partners in lumbering at Anoka, near the mouth of Rum river. The defendant, Mille Lacs Lumber Company, is a

corporation engaged in the business of logging and the manufacture of lumber at Milaca on the same river about seventy-five miles above Anoka. In furtherance of its business, defendant built a saw mill at Milaca on the east bank of Rum River, and opposite its mill built a low dam across the river, and, at a point one-half mile above, constructed another, capable of raising a head of water from eight to ten feet in height, the flowage of which extended over half a mile up stream therefrom. At the head of said flowage it built piers on opposite sides of the channel of the river forty feet apart. From these piers down to the upper dam it drove a row of piling on each side of the channel, and connected them with boom sticks, so as to form a channel from forty to seventy feet in width from the piers down to this dam. The space between this channel and the shores of the pond it used to store its logs for manufacture in its sawmill. About 800 feet above the upper dam it constructed sorting gaps for conducting into its side booms its own logs from the main drive in the channel. At this sorting gap a plank crossing was made over the channel, on which five or six men were stationed by defendant to detain and separate its logs from those of the plaintiff, and others coming down the river in the driving season. The river, in its natural state, is about two hundred feet wide at this point. Defendant owned the land on both shores. This upper dam is provided with two sluice-ways, each about ten feet wide. It is also provided with eight gates, intended for the purpose of venting surplus water. The logs of each owner are marked with the owner's mark. To enable defendant to sort out its own logs, it had to detain all, and examine the marks, and guide its own through the sorting gaps into its side ponds. During the years 1890 and 1891, all the logs coming down the river were stopped at the piers, and a jam of logs was there formed, and the logs detained through the driving season. The logs were thereafter pushed out of the jam by plaintiffs, and floated and driven down through the channel and over the dams to the river below. They employed a crew of forty men, fifty days in this business, at an expense of three dollars a day for each man engaged. To drive logs successfully above Milaca, artificial improvements were necessary. The ordinary driving season lasts about sixty days, commencing in April and ending in June. The logs cut above Milaca constituted

the sole available supply for plaintiffs' mill at Anoka. All the logs comprised in the drives in both said years were in charge of the plaintiffs, except those belonging to defendant. In 1890, the plaintiffs had in their drive 388,337 logs, scaling 56,133,710 feet, of which they owned 8,000,000 feet. In 1891, plaintiffs had 194,861 logs in their drive, scaling 27,252,070 feet, of which they owned 6,000,000 feet.

By reason of the narrowness of the sluice-ways in the upper dam, and the height of the deadhead under them, the water did not flow through them with sufficient rapidity to create a draft or current in the channel above the dam, suitable and strong enough to bring the logs by the force of the current down through the channel to the sluice-ways, and did not at all times vent sufficient water to carry along the logs below the dam after they were sluiced through it, and a large force of men was required to push and pole plaintiffs' logs along through the channel and sluice-ways and into deep water below the dams.

This river has been used for more than twenty-five years, and never before had there been a failure to drive the logs. In 1890 and 1891, there was the usual stage of water in the driving season, and of the usual duration. In the absence of defendant's dams and other works, plaintiffs' entire drive of logs could and would, in the opinion of experts examined as witnesses, have been driven over that portion of the river in two days. Had defendant's dams and other works been properly constructed and operated, plaintiffs' drive of logs would not have been delayed one-half as long as they were, and a smaller force of men would have been required. Only a portion of the logs reached Anoka in 1890, and none of them reached there in 1891. The plaintiffs were employed by other owners to drive their logs, and were by their contracts to be paid only when the logs reached Anoka, thereby the plaintiffs lost the use, for a year, of over $20,000 compensation for driving logs for others, and their mill stood idle. The reasonable value of the use of their mill was $100 a day. By adopting the plan of catch-marking its logs, and by establishing and using more sorting gaps, and by widening and lowering the floors of the sluice-ways, and arranging its log channel so as to conform more nearly to the natural channel of the river, the work of passing the main drive through its works

would be very much expedited, and in fact accomplished in half the time required and consumed in 1890 and 1891.

The plaintiffs brought this action in August, 1891, to recover $25,-000 damages sustained by them by reason of defendant's obstructions in the river. At the close of plaintiffs' evidence, the court, on defendant's motion, dismissed the action, and plaintiffs excepted. They afterwards moved for a new trial. This was denied, the court saying: "The relief, if any, is by a public prosecution for the abatement of a public nuisance. The stream is a public highway passing over defendant's property, and the plaintiffs, with their logs, mere travelers thereon, having no greater rights than the general public. The damages they sustained were precisely the same in kind, differing only in degree, as those sustained by every other person travelling the same highway. They are damages for which the law affords no redress by private action. This is settled in this state by *Swanson* v. *Mississippi & R. R. Boom Co.,* 42 Minn. 532, and *Lummers* v. *Brennan,* 46 Minn. 209. There is no doubt plaintiffs have suffered hardship, and were it not for the settled rule in this state, it would seem they are entitled to relief."

After the decision of this appeal, the defendant presented in this court affidavits showing that the return filed here was not in fact made and certified by the clerk of the District Court, and asked that the decision be vacated, and the return stricken from the files. An order was granted requiring the plaintiffs to show cause why this should not be done. At the hearing, on July 19, 1893, an order was made granting the defendant's motion.

*W. Hammons* and *Chas. Keith,* for appellants.

This court has in *Miller* v. *Chatterton,* 44 Minn. 338, substantially announced the law applicable to this case, and placed itself in line with the holdings of the courts of last resort in the great lumber states.

The case of *Stetson* v. *Faxon,* 19 Pick. 147, is cited with approval by many law writers. It contains a large collection of authorities, all of which support the position contended for by plaintiffs. See, also, *Davis* v. *Winslow,* 51 Me. 264; *Gerrish* v. *Brown,* 51 Me. 256; *Veazie* v. *Dwinel,* 50 Me. 479; *Dudley* v. *Kennedy,* 63 Me. 465; *Mc-*

*Pheters* v. *Moose River Log Driving Co.*, 78 Me. 329; *Watts* v. *Titta-bawassee Boom Co.*, 52 Mich. 203; *Weise* v. *Smith,* 3 Oreg. 445; *Enos* v. *Hamilton,* 27 Wis. 256, 24 Wis. 658; *Sullivan* v. *Jernigan,* 21 Fla. 264; *Sewall's Falls Bridge* v. *Fisk,* 23 N. H. 171; *Fultz* v. *Wycoff,* 25 Ind. 321; *Gifford* v. *McArthur,* 55 Mich. 535. See, also, Cooley, Torts, 732; Gould, Waters, 182; 2 Parsons, Contracts, 460; 2 Eng. & Am. Encyc. 470; Bishop, Noncontract Law, § 424; Hilliard, Torts, 112.

One of Minnesota's leading industries is the logging and lumber business. Millions of dollars of capital and thousands of men find steady employment in it. All of the states similarly situated have, in cases of this kind, awarded to the injured party substantial damages. It would be a calamity to this industry, far-reaching and disastrous in its consequences, if this court should hold that conduct, such as the evidence tended to establish, may be freely indulged in by any person without fear of being compelled to respond in damages to the party injured. These appellants respectfully ask this court to reconsider *Swanson* v. *Mississippi & R. R. Boom Co.*, 42 Minn. 532, and *Lammers* v. *Brennan,* 46 Minn. 209.

*Eller & How,* for respondent.

Upon this appeal it is not necessary for the defendant to vindicate the character of its works. Plaintiffs failed to make out any cause of action for which relief can be afforded in a private action. The most that can be claimed is, that the works are a public nuisance in a public highway, and an interference with the traveler's right of free passage thereon. The only wrong suffered by the plaintiffs was an interference with their right of free and unobstructed travel. The injury, if any, was only to that public right of passage that plaintiffs possess in common with the general public, to freely travel on this highway with their logs. The defendant owned the shore and bed of the stream, and was in fact the possessor of all the rights that might be enjoyed in connection with the stream at that point, subject only to the public easement. The rule applicable in such case is old and well settled that no private action can be maintained for injuries resulting from the invasion of a mere public right, such as the right to travel a highway, unless

the damages sustained are special in their character and peculiar to the individual injured. They must differ in kind, and not merely in degree, from those suffered by others who may travel the same highway. They must be the result of some act, that, in addition to being a public wrong, also operates as an invasion or interference with private rights. This rule must be regarded as settled in this state. *Swanson* v. *Mississippi & R. R. Boom Co.*, 42 Minn. 532; *Lammers* v. *Brennan*, 46 Minn. 209; *Aldrich* v. *Wetmore*, 52 Minn. 164.

For similar applications of the same principle elsewhere, see *Blackwell* v. *Old Colony R. Co.*, 122 Mass. 1; *Blood* v. *Nashua & L. R. Corp.*, 2 Gray, 137; *Brightman* v. *Inhabitants of Fairhaven*, 7 Gray, 271; *Thayer* v. *New Bedford R. Co.*, 125 Mass. 253; *South Carolina Steamboat Co.* v. *South Carolina Ry. Co.*, 30 S. C. 539; *Winterbottom* v. *Lord Derby*, L. R. 2 Ex. 316.

COLLINS, J. When plaintiffs rested their case upon the trial the court dismissed the same on the ground that the testimony introduced was insufficient to sustain the action. A motion for a new trial was afterwards denied, and the questions involved are before us on a bill of exceptions. From this bill it appears that both parties have been engaged in lumbering for several years upon Rum river, a stream navigable for logs and timber. Both parties cut their logs on the upper waters, and drive them to their respective mills, there to be manufactured into lumber. The plaintiffs' mill is at Anoka, the defendant's about 75 miles above it, at Milaca; and it follows that plaintiffs' logs must be driven past the point at which defendant's are taken from the stream and manufactured. The only practicable way in which either of these mills can be supplied with logs is by driving them down the said river. Just above its mill the defendant company constructed two dams across the river, about a half mile apart, the natural result being to create a pond and slack water above each, the slack water in the upper pond extending about 3,000 feet above the upper dam. In this pond the defendant placed piers, piling, and boom sticks, so that a path or way was made from 40 to 70 feet wide, leading from about where the slack water began directly to the dam, and crossing the original channel of the stream twice. Side booms were

put in by defendant on either side of the way, and at a convenient place a sorting gap, and all logs coming down the river had to pass men in defendant's employ, stationed at the gap, whose business it was to guide logs bearing defendant's marks into these side booms for storage, and to allow all other logs to pass on. Between the dams there was piling and booms. The inevitable result was to delay and detain plaintiffs' and all other logs destined for points below defendant's mill. In the years 1890 and 1891 these plaintiffs were engaged for themselves, and, under contract, for other persons, in making what is called a "clean drive" of the river. It is unnecessary to go into the details as to the exact manner in which it was done, but the testimony produced by plaintiffs on the trial tended to show that by reason of the piers, piling, booms, boom sticks, and dams before mentioned, and the way in which defendant's employes performed their work above and at the sorting gap, and appropriated the river for the storage of defendant's logs, the passage of the logs which plaintiffs were driving was unnecessarily impeded and obstructed, and that plaintiffs were unreasonably and oppressively hindered and delayed in their driving operations, to their great damage; the object of this action being to recover the amount of such damages.

It is apparent that the learned trial judge, although convinced that by reason of the maintenance of a public nuisance in the river a wrong had been committed for which plaintiffs should have redress, felt constrained to dismiss the action on the authority of two recent cases,—*Swanson* v. *Mississippi & R. R. Boom Co.*, 42 Minn. 532, (44 N. W. Rep. 986,) and *Lammers* v. *Brennan*, 46 Minn. 209, (48 N. W. Rep. 766),—and we are obliged to admit that, if reliance could be placed on our views as to the proper application of a well-settled rule of law to a given state of facts as expressed in *Swanson* v. *Mississippi & R. R. Boom Co.*, he was fully justified in his ruling. While differing somewhat on the facts, the present case cannot be distinguished from that, and the rule there announced as applicable and controlling, preventing a recovery by the plaintiff, if rightly applied on that occasion, would be equally as pertinent and equally as determinative on this. But we are now convinced that an error was committed in the application to the facts in the *Swanson Case* of the salutary and well-established rule that an in-

dividual cannot maintain a private action for a public nuisance by reason of any injury which he suffers in common with the public, and that it is only when he sustains special injury differing in kind, not merely in. degree or extent, from that sustained by the general public, that he may recover damages in a private action; and an examination of the opinion recently filed in *Aldrich* v. *Wetmore*, 52 Minn. 164, (53 N. W. Rep. 1072,) will indicate that we then had doubts of the correctness of the decision in *Swanson* v. *Mississippi & R. R. Boom Co.*

In the opinion in *Aldrich* v. *Wetmore*, *supra*, most of the cases in this court bearing on the subject, and many others, were referred to and discussed, and we are not inclined to again go over the ground.

It is obvious that there has been a very marked conflict of opinion in the application of the rules pertaining to the rights of private parties to have redress in private actions when injuries have grown out of public nuisances, and as to where, on the facts, the line should be drawn. This conflict, and that the adjudicated cases are irreconcilable, is well shown in *Stetson* v. *Faxon*, 19 Pick. 147; *Farrelly* v. *City of Cincinnati*, 2 Disney, 516; and in Wood, Nuis. ch. 19.

That a nuisance, such as an unreasonable or wanton obstruction of a navigable stream, a public highway, may be public in its general effect upon the public, and at the same time private as to those individuals who suffer a special and particular damage therefrom, distinct and apart from the common injury, need not be demonstrated by illustration. The public wrong inflicted upon all persons must be redressed by a public prosecution, and the private injury by an appropriate private action. An obstruction to a highway, although it be an infringement upon the rights of the general public, in the nature of a public nuisance, may be, and frequently is, productive of special and particular damage to a private individual; and it would be highly unjust and inequitable to say that he has no right of redress in a private action, on the ground, merely, that the injury had resulted from an act which is a public offense in itself, and because other persons might have been injured and damaged in the same manner and to the same extent, had they met the

obstruction under like circumstances. Such is not the law. The general doctrine in reference to the use of navigable streams as public highways is that each person has an equal right to their reasonable use. What constitutes a reasonable use depends upon the circumstances of each particular case, and no positive rule can be laid down to define and regulate such use with precision, so various are the subjects and occasions for it, and so diversified the relations of the parties therein interested. The defendant had the right, as had the plaintiffs, to use the river as a highway for the purposes of navigation, and, as an incident to this, the right to secure its logs in side booms, although the inevitable result would be to temporarily obstruct the logs of other persons destined for a mill or market further down the stream. And we have no doubt of its right, in a reasonable manner, to erect piers and dams, and to put in piling, and attach boom sticks, and also to maintain side booms for the storage of logs; but it was not authorized by the construction of piers, dams, booms, or boom sticks, or by the management of either, or of a sorting gap, to unreasonably or oppressively obstruct or blockade the way. It must use the stream with due deference to the rights of others, and in most respects streams used for highway purposes are governed by the same general rules of law as are highways upon land. No general rule can be laid down for determining whether a pleading shows, or whether the evidence produced upon a trial tends to establish, a case under the principle or rule that, to maintain an action for a wrong or injury arising out of the maintenance of a public nuisance, an individual must have sustained special injury differing in kind, not merely in degree or extent, from that sustained by the general public; and we shall not attempt it. It is well discussed in *Aldrich* v. *Wetmore, supra.* We are of the opinion that the case now under consideration was brought within the rule, and that the evidence tended to show that plaintiffs had suffered a special and particular injury. This injury, the direct result of an unreasonable detention of their logs by means and methods for which defendant company is responsible, was wholly distinct and different in kind, not merely in degree and extent, from that sustained by the general public.

A private action can be maintained to redress this injury, not-

withstanding there is also a remedy afforded the public. In principle the plaintiffs' rights cannot be distinguished from the individual rights considered in *Brakken* v. *Minneapolis & St. L. Ry. Co.*, 29 Minn. 41, (11 N. W. Rep. 124,) and in numerous other cases in this court, where an action to redress a private wrong, growing out of a public nuisance, has been declared the proper remedy. Attention is called to *Brown* v. *Watson*, 47 Me. 161, and *Enos* v. *Hamilton*, 27 Wis. 256, in which the exact question now before us has been discussed briefly, and passed upon. Both cases support the conclusion herein reached, and the one last cited has been approved in at least three later cases in the same court. That it has been the common practice to bring actions at law not distinguishable from that at bar, and also in equity, and to prosecute them to a successful termination, will be seen from an examination of the following: *Powers* v. *Irish*, 23 Mich. 429; *Watts* v. *Tittabawassee Boom Co.*, 52 Mich. 203, (17 N. W. Rep. 809;) *Gifford* v. *McArthur*, 55 Mich. 535, (22 N. W. Rep. 28;) *Enos* v. *Hamilton*, 24 Wis. 658; *Clark* v. *Peckham*, 10 R. I. 36; *Blanchard* v. *Western Union Tel. Co.*, 60 N. Y. 510; *Hughes* v. *Heiser*, 1 Binn. 463; *Weise* v. *Smith*, 3 Or. 445; *Lancey* v. *Clifford*, 54 Me. 487; *Dudley* v. *Kennedy*, 63 Me. 465; *McPheters* v. *Moose River Log-Driving Co.*, 78 Me. 329, (5 Atl. Rep. 270;) *Frink* v. *Lawrence*, 20 Conn. 117.

Order reversed.

VANDERBURGH, J., absent, took no part herein.

MITCHELL, J. I concur in the result, and do so more especially on the ground that, for the purposes for which plaintiffs were using the river, (driving logs,) it was their only highway for getting their timber to their mill.

(Opinions published 55 N. W. Rep. 608.)

On Rehearing. July 19, 1893.

PER CURIAM. On the hearing of an order to show cause it has been conclusively established that the appeal considered and disposed of in the opinion in the above-entitled action was so con-

sidered and disposed of on a pretended return; no return, in fact, having been made by the clerk of the district court. This was not known to this court, of course, until after the opinion had been filed, nor was it within the knowledge of respondent's counsel. As the court had no jurisdiction of the cause, it is now ordered that the pretended return be stricken from the files, and that the order heretofore made, whereby the order of the court below denying plaintiffs' motion for a new trial was reversed, be set aside and vacated.

(Opinion published 55 N. W. Rep. 1119.)