No. 23,648.

Asa W. Farney and Henry W. Massman, *Appellees,* v. The Leavenworth Terminal Railway & Bridge Company, *Appellant.*

SYLLABUS BY THE COURT.

1. Contract — *Construction of Bridge — Contract Violated — Shifting River Channel—Damages—Pleadings—Demurrer.* The defendant constructed a bridge over the Missouri river at Leavenworth under certain acts of congress which, among other things, required the defendant at its own expense to "build and maintain under direction and supervision of the Secretary of War, such wing dams and booms and other works necessary to maintain the channel within the draw span or spans of said bridge." The amended petition alleged that the defendant failed to build any such wing dams, booms or other works, by reason of which failure the channel of the river shifted and ran under another span of the bridge, causing the plain-

tiffs large damage in the work of constructing protection to the bank of the river near the bridge. *Held,* that such pleading stated a cause of action, and a demurrer thereto was properly overruled.

2. SAME. Such a bridge as the one referred to in paragraph one hereof built and maintained without any wing dams, booms or other works necessary to maintain the channel within the draw span, thereby permitting it to shift and run under another span, would be a public and private nuisance, for the maintenance of which a party damaged as alleged by the plaintiffs could recover damages.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 8, 1922. Affirmed.

*A. E. Dempsey,* of Leavenworth, for the appellant.

*Benjamin F. Endres,* of Leavenworth, *A. L. Cooper, John S. Wright, I. J. Ringolsky, M. L. Friedman,* and *William G. Boatright,* all of Kansas City, Mo.; for the appellees.

The opinion of the court was delivered by

WEST, J.: The amended petition alleged that the plaintiffs were doing business as the Farney-Massman Construction Company; that the Missouri river is a navigable stream; that on February 25, 1889, and on July 25, 1890, the defendant, a bridge company, was granted the privilege of constructing a railroad-and-wagon bridge across the river at Leavenworth upon the express condition that provisions should be made for maintenance of a waterway—

"And navigable channel so related so (to) said bridge that traffic and navigation upon said stream would not be interfered with more than was necessarily incident to opening the so-called draw-span, and that said bridge should contain a draw-span not less than four hundred feet in length, which should be maintained over the main channel of said river and defendant obligated itself to maintain the channel of said river within the draw-span of said bridge, . . . "

That in the fall of 1912 the plaintiffs were engaged in constructing certain river protections at Fort Leavenworth requiring them to transport rock and other material along the river, past where the bridge is located, and that at the time of the beginning of such work and for two or three years prior thereto it was well known to the defendant that the navigable channel of the river did not flow under the draw span of said bridge but flowed under a span six or seven hundred feet east of the draw span—

"That said change of the navigable channel was caused and permitted by the negligence and carelessness of the defendant in permitting obstructions to be placed in the Missouri River and in not building wing dams, booms and

other works necessary to prevent said change of said channel and necessary to maintain the navigable channel within the draw-span of said bridge."

It was further alleged that the defendant in disregard of its duty took no steps to keep the channel open under the draw span, whereby the plaintiffs had to transport their material by rail instead of by water at an increased cost, and causing a loss of $11,500 for which they asked judgment. Attached to the amended petition as an exhibit was an act of congress, approved February 25, 1889, authorizing the construction of the bridge, one section of which provided that it should be constructed as a pontoon draw-span bridge—

"And shall contain a ponton draw-span of not less than four hundred feet in length, which draw-span shall be maintained over the main channel of the river at an accessible and navigable point, and the piers of said bridge shall be parallel with, and the bridge itself at right angles to, the current of the river. . . . No bridge shall be erected or maintained under the authority of this act which shall at any time substantially or materially obstruct the free navigation of said river, and if any bridge erected under such authority shall, in the opinion of the Secretary of War, obstruct such navigation, he is hereby authorized to cause such change or alteration of said bridge to be made as will effectually obviate such obstruction."

Section 6:

"That the right to alter, amend, or repeal this act is hereby expressly reserved, and the right to require any changes in said structure or its entire removal, at the expense of the owners thereof whenever the Secretary of War shall decide that the public interest requires it, is also expressly reserved."

Another exhibit was also attached, being an act of congress, approved February 25, 1890, authorizing the Leavenworth and Platte County Bridge Company to substitute a pivot instead of a pontoon bridge, and providing that in case of the substitution of such pivot drawbridge it must be done with the approval of the Secretary of War—

"And any change in the construction, or any alteration of said bridge that may be directed at any time by Congress or the Secretary of War shall be made at the cost and expense of the owners thereof: *Provided,* That said Leavenworth and Platte County Bridge Company shall at its own expense, build and maintain under direction and supervision of the Secretary of War, such wing dams and booms or other works necessary to maintain the channel within the draw span or spans of said bridge."

An answer and reply and certain supplemental pleadings were filed, and in considering a demurrer to the reply the court carried it back to the amended petition and overruled it as to that pleading, and from this order the defendant appeals.

The defendant argues that the amended petition states no cause of action for the reason that the bridge was built under the authority of the Secretary of War and was therefore a lawful structure, and hence, not a nuisance. As to the charge that the change of the channel was caused by the negligence of the defendant in not building wing dams and booms, it is urged that there is no allegation that the bridge, when built, did not comply with the conditions and limitations of the acts of congress or that the defendant permitted the structure to decay or become an obstruction to navigation, and the river and harbor act of 1890, statute at large, is referred to. This act authorized the Secretary of War, whenever he shall have good reason to believe any bridge over any navigable water is a reasonable obstruction to free navigation, and made it his duty, after giving reasonable opportunity to be heard, to notify the parties controlling such bridge so to alter the same as to render navigation thereunder free, and in giving such notice he shall specify the changes recommended by the chief engineer and prescribe reasonable time in which to make them. Hence, it is argued that even the Secretary of War has no authority or control to order changes in any bridge and that, as congress has full power over navigable waters, until congress and the Secretary of War take some affirmative action, the defendant has neither duty nor authority to act. Counsel cite *Union Bridge Co. v. United States*, 204 U. S. 364, that when congress has once legalized a structure over a navigable stream, it cannot be deprived of its lawful character.

Counsel for the plaintiffs contend that when such bridge is either not built or not maintained in the manner prescribed by the acts of congress it ceases to be a lawful structure and becomes an unlawful obstruction to navigation, and that the defendant did not have to await the order of the Secretary of War to build the necessary wing dams and booms, but was at all times bound to attend to this matter of its own motion, the only requirement being that the plans of such work should be approved by him. They also argue that obstruction of navigable streams may constitute both a public and private nuisance and that when one has sustained damage by reason of such an obstruction, he may recover therefor.

There is no doubt that congress under ordinary conditions (not involving matters of life, health and property calling for the exercise of state police power) has full authority over navigable waters and any bridges which may be built thereover. (*Drainage Dis-*

*trict v. Railway Co.*, 87 Kan. 272, 123 Pac. 991, and *Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937.) Also, when a bridge is built in compliance with the requirements of the Secretary of War it cannot constitute a nuisance of which private parties may complain. Also, when once constructed no material changes can be made except in compliance with the orders of the Secretary of War.

The defendant refers to *Kansas Southern Ry. v. Kaw Valley Dist.*, 233 U. S. 75, holding that the state had no jurisdiction over the interstate bridge there involved and could not order a change in its construction without the authority of the Secretary of War. That opinion expressly recognized our direct holding as to the power of the Secretary of War, but the venerable justice who wrote it seemed entirely unaware of the devastation and havoc wrought by the terrible flood of 1903—one of the worst calamities that ever visited the Mississippi Valley—and treated the case as one involving merely "helping the drainage of a district." The fact that the railroad company, in spite of its paper victory, went ahead and did precisely what we had ordered done was very succinctly and delicately pointed out by Mr. Justice Dawson in *Drainage District v. Railway Co.*, 99 Kan. 188, 161 Pac. 937, who there well said:

"Interstate commerce was made for man, and not man for interstate commerce." (p. 207.)

But here the real question presented is the effect of the defendant's alleged failure to build proper wing dams and booms and other structures to keep the channel flowing under the draw span. The statute quoted from leaves it entirely clear that when the defendant undertook the construction of the bridge it obligated itself to build these necessary structures in order that the channel might continue to run beneath the draw span, and as against the demurrer the allegation of the plaintiff was sufficient to show that the change in the channel was brought about partially, if not wholly, by failure to build these structures. No authorization was required before proceeding with such construction; the only prerequisite was that they be built in the way approved by the Secretary of War; and the allegation that no attempt had been made to comply with this requirement of the act of congress leaves the defendant in the attitude of having failed to fulfill one of the obligations of its contract with the government when it undertook to erect the bridge.

Neither can it be said that the plaintiffs, under the allegations of their amended petition, suffered no more injury than the general

public by reason of the defendant's alleged failure to build the proper structures. The fact that the plaintiffs had a contract to construct certain river protection which required moving up the stream a large amount of material, together with the fact that the defendant's default caused it to move such material by land at a largely increased expense, would as a matter of common sense seem to place the plaintiffs in a different situation from that of the general public and entitle them to damages for the injury thus caused, and the authorities to the same effect seem clear, if not unanimous. (*Vernard v. Cross,* 8 Kan. 248; *Tobie v. Comm'rs of Brown Co.,* 20 Kan. 14, 16; *Winbigler v. Clift,* 102 Kan. 858, 172 Pac. 537, and cases cited; *Dudley v. Kennedy,* 63 Maine, 465; *Page v. Mille Lacs Lumber Co.,* 53 Minn. 492; *Little Rock R. R. Co. v. Brooks,* 39 Ark. 403; Note 11 L. R. A., n. s., 1060.)

The order overruling the demurrer as to the amended petition is affirmed, and the cause remanded for further proceedings.

Motion for rehearing denied January 6, 1923.