**In the Matter of the Petition of Michael C. ROLLINS for the Establishment of a Cartway.**

**No. A06–2107.**

Court of Appeals of Minnesota.

Sept. 25, 2007.

Wilbert Hendricks, Hendricks Law Firm, Pine River, MN; and Katherine

MacKinnon, St. Louis Park, MN, for appellant Michael C. Rollins.

Timothy J. Grande, Frederick W. Vogt, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for respondents Ivan and Lois Krueger.

Stephen G. Andersen, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for respondent Cass County Board of Commissioners.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and MUEHLBERG, Judge.

## OPINION

MUEHLBERG, Judge.*

Appellant Michael Rollins, who owns land on the west shore of Bear Island on Leech Lake, petitioned respondent Cass County for a cartway to provide access to his land from the east side of the island over land owned by respondents Ivan and Lois Krueger. When the county denied Rollins's petition, he appealed the denial to the district court. By summary judgment, the district court affirmed the county's decision, denied Rollins's motion for sanctions, and awarded the Kruegers attorney fees and costs from Rollins. Rollins appeals. The proposed cartway would not connect Rollins's land to a public road. Therefore, Rollins is not entitled to a cartway, and the district court properly affirmed the county's denial of the cartway petition. But because the district court failed to cite any authority to support its award of attorney fees and costs to the Kruegers, and because the relevant portions of the record do not clarify the question, we, on this record, reverse the award of fees and costs against Rollins.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

## FACTS

Bear Island on Leech Lake is not connected, by bridge or otherwise, to the mainland. Rollins owns 3.3 acres of lakefront land on the western shore of Bear Island. A platted trail starts at the eastern shore of Bear Island and runs west to Lot 1 on the western shore of the island. Lots 2–14 are on the western shore of the island and run, in numerical order, south from Lot 1. Where the platted trail reaches Lot 1, it turns south and continues to Lot 14. Rollins owns lots 8, 12, 13, and 14. Where the platted trail starts on the eastern shore of Bear Island, there is a hill, and topography makes it more convenient to access the island over the Kruegers' land just south of the platted trail. Just before the platted trail reaches Lot 1 on the west side of the island, topography makes it easier to cut across another portion of the Kruegers' land to get to the portion of the platted trail that runs south. The Kruegers' predecessor in interest used a bulldozer to clear a trail that approximates the platted trail, except for the eastern-shore access point and the Lot–1 point. At those two places, the cleared trail followed the island's topography. The western shore of Bear Island is steeper than the eastern shore, and when the weather is bad, the western shore of the island lacks the shelter available on the eastern shore of the island.

In 1999, Rollins started proceedings to gain an access to his land by a route partially over the platted trail and partially over the Kruegers' land. Rollins's legal proceedings culminated in a May 2005 judgment and a September 2005 order in which the district court rejected Rollins's claims that a road following the cleared trail existed by statutory dedication, that a

---

appointment pursuant to Minn. Const. art. VI, § 10.

road existed following the cleared trail by common-law dedication, that he had an easement by implication or necessity following the cleared trail, and that he had an easement by prescription following the cleared trail. Other issues regarding "damages" were apparently not resolved at that time.

Two weeks after the district court's September order, Rollins petitioned the county to establish a cartway across the Kruegers' land following the cleared trail.

Before the district court tried the remaining damages issues, Rollins petitioned this court for a "writ of prohibition/mandamus" to remove the district court judge then presiding over the matter. This court denied the petition.

In December 2005, the county denied Rollins's cartway petition, and in January 2006, he started a new district court proceeding when he appealed the county's denial of his cartway petition to district court. In February 2006, the district court's determinations in the first (dedication and easement) action were challenged in this court when Rollins appealed, and the Kruegers filed a notice of review.

After an August 9 district court hearing on the parties' summary-judgment motions in Rollins's appeal of the denial of his cartway petition, the district court granted the Kruegers summary judgment affirming the county's denial of Rollins's cartway petition, denying Rollins's motion for sanctions against the Kruegers, finding Rollins's motion for sanctions to be in bad faith, and awarding the Kruegers $4,732 in attorney fees and costs they incurred in defending against Rollins's motion for sanctions. On September 19, this court affirmed the district court's rulings in the appeal then pending in this court. *Rollins v. Krueger*, No. A06–248, 2006 WL 2677833, at *1 (Minn.App. Sept.19, 2006). In November, Rollins filed this appeal from the district court's summary judgment affirming the county's denial of Rollins's cartway petition and the award to the Kruegers of fees and costs.

## ISSUES

1. Did the district court err by granting summary judgment affirming the county's denial of Rollins's cartway petition?

2. Does the record support the award to the Kruegers of attorney fees and costs they incurred in defending against Rollins's motion for sanctions?

## ANALYSIS

### I.

■ "A town board[ [1] ] shall establish a cartway upon a petition of an owner of a tract of land ... [who] has no access thereto except over a navigable waterway or over the lands of others." Minn.Stat. § 164.08, subd. 2(a) (2006); *see also* Minn. Stat. § 645.44, subd. 16 (2006) (stating " '[s]hall' is mandatory"). Here, the district court's summary judgment affirmed the county's denial of Rollins's cartway petition by ruling that Rollins already had direct access to his property across Leech Lake and that Rollins's reading of the statute to allow him "a right to access his property over land belonging to the Kruegers when weather prohibits travel to the west side of the island, but provides a safe journey from the east side of the island ... would wreak havoc upon nearly every island upon every body of water in

---

1. "In an unorganized territory, the board of county commissioners of the county in which the tract is located shall act as the town board." Minn.Stat. § 164.08, subd. 2(b) (2006). Here, because Bear Island is part of an "unorganized territory" in Cass County, Rollins's cartway petition was presented to the Cass County Board.

Minnesota[.]" Citing the portion of the cartway statute stating that a cartway "shall" be established where a landowner has no access to his property "except over a navigable waterway or over the land of others[,]" Rollins argues that the district court erred by using what it determined was his direct access to his property from the lake as a basis for affirming the county's denial of the cartway petition.

On appeal from summary judgment, appellate courts address two questions "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *In re Daniel*, 656 N.W.2d 543, 545 (Minn.2003) (quotation omitted). In doing so, an appellate court views the record in the light most favorable to the party against whom summary judgment was granted. *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). And where, as here, the relevant facts are undisputed, a district court's application of the law to the facts results in a conclusion of law which is reviewed de novo, and "the sole issue is whether the district court correctly interpreted Minn.Stat. § 164.08, subd. 2." *Daniel*, 656 N.W.2d at 545. Statutes are interpreted to effectuate the intent of the legislature. Minn.Stat. § 645.16 (2006).

■ The purpose of a cartway is to "connect[ ] a petitioner's land with a public road." *Daniel*, 656 N.W.2d at 546. Rollins, however, seeks a cartway to connect his property with the lake. "Public road" for cartway purposes is not explicitly defined by statute or by caselaw. For the reasons stated below, however, we conclude that the lake is not a public road for cartway purposes.

Cartways are addressed in chapter 164 of the Minnesota Statutes. The definitions in Minn.Stat. § 160.02 (2006) apply to chapter 164, but those definitions lack a definition of "public road." Minn.Stat. §§ 164.01, .02 (2006). Also, the types of roads and highways defined in Minn.Stat. § 160.02 do not include waterways.[2] Further, with the exception of some city streets,

> [f]or the purposes of chapters 160 to 165 the roads of this state shall be designated and referred to as trunk highways, county state-aid highways, municipal state-aid streets, county highways, and town roads. They shall be established, located, constructed, reconstructed, improved, and maintained as provided in chapters 160 to 165 and acts amendatory thereto.

Minn.Stat. § 160.01, subd. 1; *see* Minn. Stat. § 160.01, subd. 2 (excluding some city streets from the categories of roads listed in Minn.Stat. § 160.01, subd. 1). Because the non-city-street "roads of this state" are, at least for purposes of chapters 160 to 165, divided into the categories listed, and because the categories listed do not include waterways, we decline to read the relevant statutes to include Leech Lake as a public road for cartway purposes. *See, e.g., Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) (stating that "[i]f there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks"); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) (stating that "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this

---

**2.** The county argues that under *In re Daniel*, 644 N.W.2d 495 (Minn.App.2002), whatever a "public road" is defined to be, it requires a legally enforceable right to access over a road controlled by a public authority. The cited *Daniel* opinion, however, was reversed by the supreme court. *Daniel*, 656 N.W.2d at 546.

court"), *review denied* (Minn. Dec. 18, 1987).

Rollins argues that the lake can be deemed a public road because it is a navigable water and caselaw treats navigable waters as "public highways." To support his argument that navigable waters are treated as "public highways," Rollins cites two cases.

The first case Rollins cites is *Page v. Mille Lacs Lumber Co.*, 53 Minn. 492, 55 N.W. 608 (1893). For two reasons, however, it is not helpful here. First, the supreme court vacated *Page* shortly after it issued that opinion. 53 Minn. 501, 55 N.W. 1119 (1893). Second, to the extent Rollins makes an argument including an analysis similar to that presented in the vacated *Page* opinion, we reject that argument because *Page* is not analogous to the current case. *See Viebahn v. Bd. of Comm'rs of Crow Wing County*, 96 Minn. 276, 283, 104 N.W. 1089, 1092 (1905) (stating "[w]hile the order granting a new trial in the *Page* case was subsequently set aside for some defect in the return to this court, the decision on the merits has been accepted as, and is now understood to be, the law of this state"). *Page* involved a district court's dismissal of a nuisance suit brought by a lumber company owning a mill downstream from a blockage of the stream created by another lumber company. 53 Minn. at 497–98, 55 N.W. at 608. The supreme court acknowledged that the dismissal of the suit was consistent with one of its prior opinions, but it also stated that it was "convinced" that the prior opinion involved an error in the application of the general rule that an individual can maintain a private action for a public nuisance "only when he sustains special injury differing in kind, not merely in degree or extent, from that sustained by the general public, that he may recover damages in a private action[.]" *Id.* at 498–99, 55 N.W.

at 609. The supreme court then noted that it had "recently" expressed "doubts of the correctness of the [prior] decision[,]" that "[i]t is obvious that there has been a very marked conflict of opinion in the application of the rules pertaining to the rights of private parties to have redress in private actions when injuries have grown out of public nuisances[,]" and that "[t]his conflict, and that the adjudicated cases are irreconcilable[.]" *Id.* at 499, 55 N.W. at 609.

In reevaluating its prior holding regarding the circumstances under which a private action may be maintained for a public nuisance, *Page* incidentally states that "[t]he general doctrine in reference to the use of navigable streams as public highways is that each person has an equal right to their reasonable use [of the stream]" and that "in most respects streams used for highway purposes are governed by the same general rules of law as are highways upon land." *Id.* at 500, 55 N.W. at 609. Opinions must be read in light of the issue presented for decision. *Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964). And assumptions underlying an opinion that are not the subject of a court's analysis are not precedential on the point that is assumed. *See Chapman v. Dorsey*, 230 Minn. 279, 288, 41 N.W.2d 438, 443 (1950) (stating that an opinion deciding an appeal based on the assumption that appellate jurisdiction existed is not precedential regarding the existence of appellate jurisdiction where the existence of appellate jurisdiction was not addressed by the court). Here, because the crux of *Page* is the supreme court's reevaluation of its prior ruling regarding the circumstances under which a private action may be maintained for a public nuisance, and because *Page's* statements analogizing navigable streams to public highways was not the focus of the supreme court's analysis, we decline to

read *Page* to require that Leech Lake be treated as a public road for cartway purposes, especially where the definitional statutes relevant to cartways apparently exclude waterways from being public roads.

The second case Rollins cites involved a challenge to the issuance of public bonds to finance the alteration of bridges over the Mississippi River to ensure a minimum clearance above the river. *Bybee v. City of Minneapolis*, 208 Minn. 55, 55–56, 292 N.W. 617, 617 (1940). In doing so, it takes judicial notice "that the Mississippi River is a navigable stream within the requirements specified in *Lamprey v. State*, 52 Minn. 181, 53 N.W. 1139 [ (1893) ]. As such, it is an actual or potential artery for river traffic. In this sense it is a public highway." *Bybee*, 208 Minn. at 56–57, 292 N.W. at 618. For three reasons, we conclude that *Bybee* does not require Leech Lake to be deemed a public road for cartway purposes. First, *Bybee* does not state that navigable streams *are* public highways, it says that, in the "sense" that the river is an artery for river traffic, it will be treated as a public highway. *Id.* Thus, *Bybee* held that, for purposes of addressing the public's right to use the river, it would analogize the river to the public's right to use a public highway. *Id.* Rollins cites no precedent allowing him to parley *Bybee's* analogy regarding use of an already existing waterway into authority for requiring owners of private property to surrender their property rights for the creation of a previously nonexistent cartway. Second, as noted above, the relevant statutes appear to exclude waterways from being public roads for cartway purposes. Third, *Bybee's* statement that the Mississippi River was deemed a public highway in the "sense" that the public had a right to its use was based on *Lamprey*. And *Lamprey* was unambiguous that the rule recited therein defining navigable water-

ways is a common-law rule. *Lamprey*, 52 Minn. at 198–200, 53 N.W. at 1143–44. We decline to apply a common-law rule to the statutory cartway process, especially when the requested application of the common-law rule is contrary to the relevant statutory definitions that seem to exclude waterways from the definition of public roads.

## II.

■ Rollins moved the district court, under Minn.Stat. § 549.211 (2006) and Minn. R. Civ. P. 11, for sanctions against the Kruegers and the county. The day before the hearing, the Kruegers submitted a memorandum and supporting affidavit opposing Rollins's motion. The memorandum cited Minn.Stat. § 549.211, subd. 4(a), and rule 11 to argue that Rollins's motion for sanctions was unsupported, made in bad faith, and that they should be awarded $4,732 in expenses and fees for defending against Rollins's motion. The affidavit averred that the Kruegers had incurred $2,532 in fees and expenses defending against Rollins's motion for sanctions and that they expected to incur an additional $2,200 by the conclusion of the hearing. The district court denied Rollins's motions, found that Rollins's "motion for sanctions [was] made in bad faith and warrants sanctions[,]" and awarded the Kruegers $4,732 "for attorney's fees and reasonable costs incurred in defending [against Rollins's] motion for sanctions." Rollins challenges this award.

■ Fee awards under Minn.Stat. § 549.211 and rule 11 are discretionary with the district court and will not be altered on appeal absent an abuse of discretion, but appellate courts review de novo a district court's construction of statutes and rules, including Minn.Stat. § 549.211 and rule 11. *Johnson ex rel. Johnson v. Johnson*, 726 N.W.2d 516, 518

(Minn.App.2007). Also, attorney fees are generally recoverable only if there is a statutory authorization or a contractual agreement allowing their recovery. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 713 (Minn.1991). Here, there is no question of a contractual authorization for an award of attorney fees, and the district court awarded fees and costs against Rollins because it found his motion for sanctions to be in bad faith, but it cited no statutory authority for its award. Under Minn.Stat. § 549.211, subd. 4(b), a district court may, on its own initiative, issue an order that describes conduct that is apparently sanctionable under Minn.Stat. § 549.211, subd. 2, and direct the alleged offender to show cause why it has not violated the statute. The finding that Rollins's motion under Minn.Stat. § 549.211 was in bad faith could be read to suggest an application of Minn.Stat. § 549.211, subd. 4(b), but because the district court did not invoke the show-cause procedure described in that statute, it cannot be used to support the award of fees and costs against Rollins. *See* Minn. R. Civ. P. 11.03(a)(2) (creating, under rule 11, a similar show-cause procedure for apparently sanctionable conduct).

Alternatively, a party prevailing in a sanctions dispute under Minn.Stat. § 549.211 "may" be awarded "the reasonable expenses and attorney fees incurred in presenting or opposing the motion." Minn.Stat. § 549.211, subd. 4(a). The Kruegers' memorandum seeking to recover fees and costs incurred in defending against Rollins's motion for sanctions invoked this provision but, as noted, the district court did not cite any authority for its award. Thus, the district court's failure to rely on the explicitly cited Minn. Stat. § 549.211, subd. 4(a), renders that provision conspicuous by its absence from the district court's order. Also, as described above, there is at least some indication that the district court may have been thinking of Minn.Stat. § 549.211, subd. 4(b), when it made its award. On this confused record, and given both the lack of authority cited by the district court and the fact that the Kruegers' request was made the day before the hearing, we decline to affirm the award of attorney fees and costs against Rollins based on an invocation of Minn.Stat. § 549.211, subd. 4(a), the authority that the district court apparently implicitly rejected. Therefore, we reverse the award of attorney fees and costs against Rollins.

## DECISION

Because Leech Lake is not a public road for cartway purposes, there is no public road to which Rollins's proposed cartway can connect, and we affirm the district court's grant of summary judgment affirming the county's denial of Rollins's petition for a cartway. But given the unclear record and the lack of clearly dispositive authority, we reverse the award of attorney fees and costs against Rollins.

**Affirmed in part and reversed in part.**