### MASON and others *v.* COTTON and others.

*(Circuit Court, D. Colorado.* November 17, 1880.)

1. RIPARIAN OWNER—USE OF WATER.—Each riparian owner has a right, within his own territory, to the use of the water as it flows, returning it to the channel of the river for the use of others below.

2. SAME — SAME — EQUITABLE RELIEF.—If, however, the water may be conveniently used by two riparian owners, without strictly enforcing such right, a court of equity may refuse to lend its aid.

3. SAME—SAME—SAME.—*Held,* therefore, a riparian owner would not be enjoined from taking water from a river for the use of his mill, although it was not returned to the channel of the river before it reached the territory of an adjoining owner, where it was not clear from the evidence that such adjoining owner could not use the water with substantially the same results through the race of the defendant's mill.

Motion to Dissolve Injunction.

*Wells, Smith & Macon,* for plaintiffs.

*H. M. & Willard Teller* and *Haynes, Dunning & Haynes,* for defendants.

HALLETT, D. J. Plaintiffs own a flouring mill, situated near Fort Collins, in this state, which is operated by water obtained from the Cache-a-la-Poudre river, through a race about one mile and one-fourth in length. This mill and race

have been used by plaintiffs and their grantors since 1872. In the summer of 1879 the Fort Collins Water-power Company, one of the defendants, made another race or canal, parallel in its general course to that used by plaintiffs, and above the latter, so as to take water from the Cache-a-la-Poudre river at a point about one-fourth of a mile above the head of plaintiffs' race. In the same year one Joseph P. Watson, having obtained water-power from the Fort Collins Company, erected a flouring mill on the line of that company's canal, about one-half mile above plaintiffs' mill, and 50 yards from plaintiffs' race. Obtaining power from a point on the river above the head of plaintiffs' race, the position of Watson's mill is such that the waters used in operating it may be delivered into plaintiffs' race, and flow thence down to plaintiffs' mill. When the Watson mill was completed and set in operation in September, 1879, this was done by agreement between Watson and plaintiffs, and both mills were run with the same water through the autumn of that year, and until business was suspended by plaintiffs in the early part of this year. It is said, however, that this use of the same water by both parties was attended with much difficulty in operating plaintiffs' mill, as the water came to them irregularly, and not in sufficient quantity to run the mill. Accordingly plaintiffs revoked the permission they had given to Watson to deliver his water into their own race, and insisted upon their right to take water from the river through their race, as they enjoyed it before the Fort Collins canal was taken out, and before the Watson mill was built. In the early part of this year defendant Carter Cotton purchased the Watson mill, and soon thereafter, in compliance with plaintiffs' demand, changed his tail-race so as to carry the water from his mill to the river *under* plaintiffs' race. It will be remembered, that, by some understanding or agreement between plaintiffs and Watson, the water from this mill was before that time delivered into plaintiffs' race, with a view to run plaintiffs' mill with the same water, and by this change such use was entirely abandoned. In August last it was found that the waters of the river were not sufficient to sup-

ply the races of both mills, and the defendant Carter Cotton, continuing to divert the same for the use of his mill, this bill was filed by plaintiffs in the district court of Larimer county, on the first of September, to restrain such diversion. An injunction was allowed in that court, and subsequently much testimony was taken by a referee before the case was removed into this court; and upon that evidence and the pleadings the present motion to dissolve the injunction is founded.

Upon all the evidence it may be said that there is not at all times in the river sufficient water to run both mills, unless the same water can be used for both of them. Such was the condition of the river when the bill was filed, and it seems that it was in the same condition during last winter. And the right of plaintiffs to take water from the river through their race, as they and their grantors have done for many years, is not denied; so that it may be assumed that at the head of their race, and thence down to their mill, they are entitled to the use of the water as riparian owners. Defendants may have the same right at the point where they take the water from the river, and thence down to the head of plaintiffs' race, where, upon familiar principles, they are bound to return the water to the channel of the river for plaintiffs' use. Conceding, then, plaintiffs' right to divert the water and use it as claimed, defendant Carter Cotton cannot assert a right to the use of it lower down the river, and within the territory already conceded to plaintiffs; for each riparian owner has a right, within his own territory, to the use of the water as it flows, returning it to the channel of the river for the use of others below; and, at the point where defendants' mill is located, that right is apparently in the plaintiffs. Manifestly, then, the defence to this suit, if any exists, is to be found in the circumstance, if it can be established, that the same water may be used for both mills, without serious detriment or hindrance to either. And that will not be an absolute and full defence; because, as before stated, the right of the plaintiffs in the use of the water, as they have hitherto enjoyed it, appears to be clear. But if it is seen that the water may be conveniently used by both

parties, a court of equity may withhold its hand—leaving the parties to the remedies afforded by law. The river not having sufficient water for both mills, independent of each other, if plaintiffs may use the water after it has passed from defendants' mill with substantially the same results as if obtained by continuous flow through their own race, the refusal so to use it would be mere captiousness, in which the court ought not to aid them. In this view the evidence has been carefully examined to determine the fact whether plaintiffs may use the water delivered into their race out of defendants' mill as well as if otherwise obtained. And although the evidence is strongly conflicting and not of the most satisfactory kind, it seems reasonable to believe that the water may be used by both parties. Witnesses testify that with apparatus well known, and already applied in defendants' mill, the water may be sent out to plaintiffs' race in even and continuous flow; and, if so transmitted, the use of it one-half mile below would seem to be free from difficulty. Some testimony is given to show that the water was at times last winter shut off by Watson, to gain a head for his mill, and no doubt is entertained as to the injury to plaintiffs by such conduct. But if those acts of his grantors can be imputed to Carter Cotton, the present defendant, it does not follow that the present defendant is now inclined to the same course, or that he will persist in it when informed that he has no right to proceed in that manner. The question for present consideration is larger and broader than that which may arise from the *manner* of using the water by defendant, and relates to *any use of it* by him during a great part of the year. To maintain this injunction would deny the right of the defendant to *any use* of the water when the volume of the stream is not sufficient for both mills, and when possibly the water may be used by both mills with equal advantage. It is true that we have no right here to impose upon the plaintiffs the terms which the defendant asks to establish—that they shall take water from his tail-race; but we can deny to plaintiffs relief in equity, leaving them to their action at law, in which all the circumstances

may be considered in coming at the measure of damages. If plaintiffs captiously refuse to receive water in a way which may be as useful to them as if it should be brought from the river through their own race, the jury will know what estimate to put upon their conduct. If defendant, by shutting off the water entirely, prevents the flow to plaintiffs' mill, the jury will be equally prepared to redress the wrong. And, when the rights of the parties have been determined at law, if either party shall persist in flagrant violation of such adjustment, equity may come to the relief of the other, with a better understanding of what needs to be done. This injunction will be dissolved, but the bill may stand if plaintiffs conceive that it may be of use to them hereafter.