MINNESOTA LOAN & TRUST COMPANY and Another v. ST. ANTHONY FALLS WATER-POWER COMPANY and Another.[1]

March 29, 1901.

Nos. 12,342—(147).

## Water Power—Upper and Lower Proprietors.

Plaintiffs are lower and defendants upper proprietors of lands bordering and abutting upon the Mississippi river at Minneapolis. Defendants, as such upper proprietors, own a valuable water-power privilege, and heretofore improved the same by the construction of a dam across the river, and the erection of a power house, head gates, tailraces, and sluices, and supplying and equipping the power house with necessary hydraulic machinery. Plaintiffs, as lower proprietors, claim to have a valuable water power appurtenant to their land, and, on the theory and contention that the improvements of defendants wholly destroy the same by a diversion of the natural channel and course of the river, brought this action to abate and enjoin the further maintenance of defendants' improvements. It is *held* that the findings of the trial court, to the effect that plaintiffs have in fact no water power appurtenant to their land of any value or practicable of development, and that defendants, by their structures and improvements, have and are making but a reasonable use of the waters of the river, are sustained by the evidence.

## Riparian Rights.

The rights of riparian proprietors to the waters of a running stream are correlative and equal, each being entitled to the reasonable use thereof.

## Reasonable Use of Water.

What constitutes a reasonable use of waters of such a stream is a question of fact, to be determined in the usual way. In doing so, the effect of the use upon the interests of all parties, the injury to one and the benefit to the other, and all circumstances affecting their rights and interests, are to be considered.

## Injunction—Valueless Power.

A lower proprietor cannot maintain an action to abate and enjoin the

[1] Reported in 85 N. W. 520.

maintenance of the improvements of an upper proprietor, upon the theory that such improvements injure and destroy a water power appurtenant to the land of such lower proprietor, when it appears that his asserted water power is in fact valueless, and not capable of beneficial development, and in consequence the improvements of the upper proprietor do not appreciably or sensibly injure his substantial rights.

Action in the district court for Hennepin county by Minnesota Loan & Trust Company, as trustee, and another to enjoin defendants from diverting the western stream of the Mississippi river or any of its waters which would naturally flow over plaintiffs' land, and to compel defendants to restore the flow of the river into its natural channel, and to remove from the western channel their dam and other obstructions, and for other relief. The case was tried before Simpson, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*Cobb & Wheelright* and *Keith, Evans, Thompson & Fairchild,* for appellants.

*Rome G. Brown, Charles S. Albert* and *Koon, Whelan & Bennett,* for respondents.

BROWN, J.

Plaintiffs own a tract of about twelve acres of land abutting and bordering on the west bank of the Mississippi river in the city of Minneapolis, near St. Anthony Falls, together with all riparian and flowage rights and privileges appurtenant and belonging thereto. Such tract of land is a part of government lot No. 3, in section 24, township 29, range 24. Its west boundary line is the section line between said section 24 and section 23, and it extends along the river a distance of two thousand one hundred feet to the south or southwesterly. Defendant St. Anthony Falls Water-Power Company owns a tract of land bordering and abutting on the east side of the river, which extends in part opposite and in part above the land so owned by plaintiffs. Defendant Minneapolis Mill Company owns land immediately above that of plaintiffs on the west side of the river, and bordering and abutting on the river opposite the tract so owned by the water-power com-

pany. Each defendant also owns all riparian and flowage rights connected with, or pertaining to, such land.

For the purpose of developing and bringing into practical use the natural water power in such river, as it exists upon their lands, defendants constructed a dam across the river immediately below the Tenth avenue bridge, in said city, from the shore line of the land of the mill company on the west, to the shore line of the land belonging to the water-power company on the east, and, to utilize the waters of the river, a power house and necessary head gates, tailraces, and sluices were also built, to be used in connection with the dam; such power house, head gates, and tailraces being upon the east side of the river. The mill company is not engaged in operating the power house, which is equipped and supplied with all necessary hydraulic machinery, but has leased its rights and interests to the water-power company, and the latter company is now maintaining and operating the same. Defendants expended in such improvements the sum of $950,000. Plaintiffs claim to have a valuable water privilege upon their land, which they allege is destroyed and rendered worthless by the construction and maintenance of defendants' improvements; it being claimed that such improvements divert the waters of the river so that they do not flow upon and along plaintiffs' land in their natural channel and course, as before the construction of defendants' improvements, and that in consequence plaintiffs are permanently injured and irreparably damaged. Defendants had judgment in the court below, and plaintiffs appeal from an order denying a new trial.

Plaintiffs assign 109 errors, but the main, and practically the only, question in the case is whether the findings of fact are sustained and justified by the evidence. We have carefully examined all assignments relating to other questions, and find nothing in them sufficiently prejudicial to justify a reversal. The parties are not in dispute as to their legal rights, at least no question of law is presented the decision of which would turn the case one way or the other. So, unless the findings of the court below are unsupported by the evidence, within the familiar rule the order appealed from must be affirmed.

Although plaintiffs have never improved their property, nor attempted to utilize their alleged water power, they may nevertheless maintain this action if their substantial rights have been injuriously affected. A silent acquiescence in the maintenance of defendants' improvements for a sufficient length of time might give rise to a prescriptive right to continue them perpetually. Prior to the time defendants commenced the construction of their improvements, one Hedderly, who then owned the land plaintiffs now own, was informed of the nature and character thereof, and notified defendants, both verbally and in writing, that their construction would divert the natural course of the river as it then flowed past his land, and irreparably injure and damage his water rights and privileges, and that he would protect whatever rights he possessed in the premises that might be infringed upon by the acts of defendants. Plaintiffs have succeeded to all the rights of Hedderly. It was not necessary to render this notice effectual that an action be brought without delay to enjoin the construction of defendants' work. Having been informed of the rights and intentions of Hedderly, defendants must be taken to have proceeded with full knowledge of all the facts, and were in no way prejudiced by a failure to resort to legal proceedings to restrain them or to test their right to proceed. But this question is of no great importance, as the case must be disposed of upon more substantial grounds.

The theory of plaintiffs' case is that defendants have, by the construction of their improvements, destroyed and rendered worthless a valuable water power owned by plaintiffs in the river adjacent to their property. The complaint alleges, in effect, among other things, that there is a natural, but undeveloped, water power appurtenant to plaintiffs' land, which constitutes the principal value thereof, and that the improvements made by defendants in the development of their upper power destroy and render the same practically worthless, and an injunction restraining the further maintenance of defendants' improvements is asked. The findings of fact are very full and comprehensive, and show that the learned trial judge fully grasped the issues and questions

presented for his decision. Upon all decisive questions, the findings are adverse to plaintiffs.

The first important question is presented by finding No. 16, which is challenged by plaintiffs. The finding is as follows:

"The bed of the river, for about one hundred fifty feet above plaintiffs' said lands, and for a distance of about six hundred seventy feet below the upper end thereof, has now, and for many years has had, no substantial fall down said river, so that at said lower point, six hundred seventy feet below the upper end of plaintiffs' land, the average elevation of the bed of said river is substantially the same as the average elevation of the bed of said river at the upper boundary of plaintiffs' land, and the lowest point in the bed of said river at said lower place in said river is a fraction of a foot higher than the lowest point in the bed of the river at the upper limits of plaintiffs' said land. That within this natural basin the velocities of the water flowing in said river prior to the construction of the defendants' improvements therein were noticeably less than the velocities above or below said basin. That said basin and the condition of flow of the waters therein have existed in said river for many years prior to the construction of defendants' said improvements. The natural fall of water surface opposite the upper one hundred sixty-five feet of said plaintiffs' land, prior to the construction of defendants' improvements, was one-half of one inch. The natural fall of water surface opposite the upper six hundred feet of plaintiffs' said land, as determined prior to the construction of said improvements, was seven-tenths of a foot. The extra cost of developing said seven-tenths of a foot, so that said fall might be utilized, is such that the said fall is not worth developing for the purposes of water power, either alone or in connection with any future development of water power privileges appurtenant to said lot 3. If the total natural fall upon said lot 3 were developed, using one-half of the waters of the river, an actual head, at the lower limits of plaintiffs' said land, of about six feet could be developed. The necessary cost incident to the development of said water power appurtenant to said lot 3 is and would be so great in proportion to the income therefrom that said water power has no value whatever for the purposes of said development."

If this finding is supported by the evidence and law of the case, it disposes of plaintiffs' right of action. As suggested by counsel for appellants, it presents the fundamental question in the case, in so far as plaintiffs' right of recovery is concerned. Though had it been in plaintiffs' favor, and to the effect that they in fact

own and possess a valuable water power, which by proper and suitable development and improvement could be put to beneficial use, it would not necessarily be decisive of the case, because other special findings are to the effect that whatever rights plaintiffs have in the premises have been in no manner impaired or damaged by the acts of defendants; that defendants have not, by the construction of their improvements, diverted the natural and ordinary course of the river, and have not exceeded such reasonable use of the river, and the waters thereof, as they are entitled to as upper proprietors. But as the finding, if sustained, effectually disposes of plaintiffs' equitable contentions,—those necessary to maintain the action,—namely, that defendants have, by an unreasonable and wrongful interference with natural conditions, destroyed a valuable water power adjacent and appurtenant to plaintiffs' property, the question whether the finding is sustained by the evidence is of first importance. There is no evidence that any other right or privilege possessed by plaintiffs has been damaged or in any way impaired, and plaintiffs can recover, if at all, as for an injury and damage to their alleged water-power privilege only. Of course, they have the right to the protection of the law as to all their rights, but the evidence does not show any injury to any other right or privilege.

Defendants are not only upper proprietors, with all the rights and privileges accorded to such by the law, but opposite proprietors as well, with all the special rights incident to such proprietorship. As upper proprietors of land on both sides of the river, they are entitled to utilize the entire body of the waters of the river in a reasonable manner.

"All that the law requires of the party by or over whose land a stream passes is that he should' use the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish or affect, the application of the water by the proprietors, above or below." Pinney v. Luce, 44 Minn. 367, 46 N. W. 561.

As opposite proprietors, they are entitled to an equal share and portion of the running water. Gould, Waters, § 207. But as defendants' improvements are entirely upon their upper estate, their rights as opposite proprietors are not of substantial materi-

ality in so far as this branch of the case is concerned. As upper proprietors, they are entitled to the reasonable use of the waters, and a use thereof which diverts the natural course of the stream as it flows along the land of a lower proprietor, or materially affects the application of the waters by such proprietor, and thereby injuriously affects his substantial rights, is unreasonable and unlawful. However, to render such use by the upper proprietor unreasonable and wrongful, there must be a lower proprietor with water power, or other rights or privileges, to be injured or destroyed. If the water privileges of the lower proprietor cannot be utilized and developed to a pecuniary advantage and benefit, a slight diversion of the main channel of the river, or a retardation of its waters, will not amount to an actionable wrong. Gould, Waters, § 208; Seeley v. Brush, 35 Conn. 419; Norway v. Bradley, 52 N. H. 86.

In this case plaintiffs complain of the destruction, by the acts of defendants, of a valuable water power owned by them as lower proprietors; and, if they in fact possess no such power as may be developed and improved to a pecuniary advantage and benefit, they certainly have suffered no damages or injury by the acts of defendants; and no court would compel the destruction or abatement of improvements of the nature, character, and cost of those of defendants, when the maintenance thereof works no appreciable injury to others. This is elementary.

The finding now under consideration is made the basis for three assignments of error, but they may be considered together. The first part of the finding relates to the condition of the river and its bed for the first six hundred seventy feet along plaintiffs' land. It is to the effect that for the distance named there is no "substantial fall down the river," and that the average elevation at the two points, the upper boundary line and the point six hundred seventy feet below, is substantially the same; that there exists a natural basin between such points, in which the waters of the river flow with greater velocity since the erection of defendants' improvements than before; and that the natural fall of water surface opposite the upper six hundred feet of plaintiffs' land is seven-tenths of a foot. It is further found, in this

connection, that the extra cost of developing such seven-tenths of a foot, so that it may be utilized, is such that said fall is not worth developing for the purposes of water power, either alone or in connection with any future development of water-power privileges appurtenant to plaintiffs' land.

It is not seriously contended that this part of the finding is not supported by the evidence, but it is urged that the matters therein are wholly immaterial and prejudicial to plaintiffs, and that the evidence tending to prove and support them should have been excluded as irrelevant and immaterial. There is no doubt but that the finding is amply supported by the evidence, both as to the condition of the river bed, and as to the extent of the water fall along plaintiffs' land to a point six hundred feet below the upper boundary line, and it is clearly apparent that plaintiffs' property cannot, between those points, be improved and utilized as a water power. Standing alone, this portion of the finding is not of controlling importance, but, in connection with what follows, the matters therein set forth are material and important upon the principal question whether the conditions of the river along the entire line of plaintiffs' property are such as to render the improvement thereof for water-power purposes practicable or impracticable. But the finding must be construed as a whole. The latter part thereof is to the effect that the necessary cost incident to the development of the water power appurtenant to plaintiffs' entire tract of land would be so great in proportion to the income therefrom that said water power has no value whatever for the purposes of such development. The suggestion that this latter portion of the finding was influenced by, and the natural result of, the findings with reference to the conditions of plaintiffs' property for the first six hundred feet down the river, is not borne out by the record.

In connection with this finding, reference may also be made to the general finding that defendants have made and are making, through the construction and maintenance of their improvements, only a reasonable use of the waters of the river. What constitutes a reasonable use of such a stream and the waters thereof depends upon a variety of circumstances. It is a ques-

tion of fact, to be determined in the usual way.   In determining it, "the effect of the use upon the interests of both parties, the benefits derived from it by one, the injury caused by it to the other, and all the circumstances affecting either of them, are to be considered."   Rindge v. Sargent, 64 N. H. 294, 9 Atl. 723; Red River Roller Mills v. Wright, 30 Minn. 249, 253, 15 N. W. 167. The rights of the respective parties are correlative and equal. Defendants have acquired no superior rights by their prior occupancy of the river above plaintiffs' land.   The right to the beneficial use of running water is not acquired by priority of location, nor is it suspended or destroyed by mere nonuser.   No riparian owner has any title to the waters, but a simple usufruct as it passes along his land.   And although plaintiffs have the unquestioned right to make such beneficial use of their property as it is susceptible of, and to develop the waterfall along the entire length of their land, the conditions of the river adjacent thereto, from the upper to the lower boundary, are pertinent and proper upon the question whether they have a water power suitable for profitable development.

Defendants may have changed the course of the stream upon their own land.   They had the right to do so, provided they restored it to its natural channel before it reached the land of plaintiffs.   The evidence is clear that they did so change it upon their own land, but the court below found that any such change in the condition of the flow of the river opposite plaintiffs' land, occasioned by defendants' improvements and structures, or their operation, do not sensibly or appreciably injure any water power owned by plaintiffs.   If the waters of the river were not in fact returned and restored to their natural channel as they flowed from defendants' to plaintiffs' land, it is very clear that they did return thereto very soon after, and long before reaching the point six hundred feet below the upper boundary line.   And as it is not feasible or practicable to develop a water power between those points, and as no other of plaintiffs' legal rights are shown to be materially affected, and as the court found as a fact that there was no loss of head or velocity of stream to plaintiffs by the acts of defendants, and that in fact plaintiffs have no water power

82 M.—33

at all practicable of development, no injury has resulted to plaintiffs, and they cannot complain. Mason v. Cotton, 2 McCrary, 82, 4 Fed. 792; Mayor v. Appold, 42 Md. 442, 456; Gould, Waters, § 214.

The question is not whether plaintiffs have been presumptively damaged, but whether their rights have been infringed and damaged and injured in fact. In cases of this nature, where there is a bodily diversion of the stream from the land of a lower proprietor, the authorities hold that such diversion constitutes an unreasonable use of the stream, and that an action may be maintained for the wrong and injury, without showing a present damage. In the case at bar there is no such diversion, but, on the contrary, but a slight change of the stream, at most, and the court expressly found that defendants are making no other than a reasonable use of the river.

We have examined the evidence presented in this case (in a voluminous record of over 1,900 pages) in the light of the foregoing observations, and reach the conclusion that the findings referred to are sustained by the evidence; at least, that the evidence is not so clearly against the findings as to justify setting them aside. We do not go into an extended discussion of the evidence, or the numerous points made by counsel. It would serve no good purpose as a precedent to do so, and would only "swell this opinion to a volume." It is not the duty of an appellate court to demonstrate, by a discussion and analysis of the evidence, the absolute correctness of the findings of the trial court. It is sufficient that the evidence be examined with such thoroughness and care as to satisfy the court beyond question that it reasonably and fairly tends to support the findings. This we have done, and as the findings specially mentioned, namely, those to the effect that plaintiffs have no water power appurtenant to their land that can be profitably developed, and that defendants by their improvements are making only a reasonable use of the waters of the river, are decisive of the case against plaintiffs, no other findings need be considered.

We may add, however, in passing, that such other findings, and the evidence pertinent thereto, have been fully considered. We

have carefully examined the whole record in the case, and conclude that all the findings of the trial court are, in the main, supported by the evidence. We were very greatly aided and assisted in the consideration of this case by the very able and lucid arguments of counsel, and their faultless and thorough briefs.

Order affirmed.

LEWIS, J.

The trial court found that the construction of the dam and the use made of the waters by defendants have not appreciably or materially changed the course of the waters of the river along plaintiffs' land; that, although discharged from the power house on the east side, yet, owing to the form of the river bed, the waters would reach the west shore as they naturally did before the construction of the dam, were it not for the crib, which had been placed in the wrong position by plaintiffs. It was further found that such changes in the flow of the stream as were made by defendants were made in the exercise of a reasonable use thereof, and that such changes do not cause any damage to plaintiffs. There is evidence reasonably tending to support these conclusions, and, believing them to be decisive of the case, I concur in the result reached by the majority.

But it was also found by the court that plaintiffs possessed a river frontage along lot 3 of two thousand one hundred feet, and that if the total natural fall upon lot 3 were developed, using one-half of the water in the river, an actual head, at the lower limits of plaintiffs' land, of about six feet could be developed. The court found that the necessary cost incident to the development of such water power is and would be so great in proportion to the income therefrom that said water power has no value whatever for the purposes of development. If it is intended by the majority to hold that the plaintiffs' rights are determined by the mere fact that their water power cannot, under present methods and conditions, be economically developed, then I must dissent from that conclusion. The methods of developing water powers may improve, and the conditions so change as to render that power profitable which now cannot be made so. The relative

values of the upper and lower powers are not the test of the rights of the respective owners. It being conceded that a lower proprietor possesses the necessary fall and conditions capable of developing power, the mere fact that, under present conditions, he cannot utilize it, except at a loss, is no justification for its destruction by an upper proprietor, who happens to be more favorably situated.