CROOKSTON WATERWORKS, POWER & LIGHT CO. v. DANIEL E.
SPRAGUE.[1]

February 11, 1904.

Nos. 13,593—(123).

**Navigable Streams.**

Section 2385, G. S. 1894, declares that all rivers within the state, of
sufficient size for floating logs, timber, and lumber, are public highways,
so far as to prevent obstructions to the same for such purposes. By sec-
tion 2386 riparian owners are authorized to construct dams across such
streams, provided they are equipped with locks, sluiceways, or booms
sufficient and so arranged as to permit such materials to pass through
without unreasonable delay. *Held*, the right of the public to the use of
streams for driving logs is not paramount and unqualified, but subject
to the incidental delays and hindrances occasioned by dams, if the means
of passage through or around them is reasonably sufficient for the pur-
pose.

**Driving Logs over Dams.**

What constitutes a sufficient means of passage must depend upon the
conditions of each particular case. A dam constructed with sufficient
sluiceways to permit the free passage of logs, but which is not equipped
with piling or piers to which sheer booms may be attached, or some other
means provided by which the logs may be directed to the sluiceways, does
not meet the requirements of the statute, and creates an unreasonable
hindrance to the passage of logs at periods of high water, when it is diffi-
cult and impracticable to attach sheer booms, and guide the logs into
the sluiceways, and keep them from running over the crest of the dam.
*Held* that, under the facts of this case, the owner of logs, who permitted
the same to pass over the dam without guiding them through the sluice-
ways by means of sheer booms, and without taking out the sluice boards,
was not responsible for damage to the dam occasioned thereby.

**Findings.**

The facts found by the trial court are not inconsistent. They justify
the judgment as ordered, and appellant is not entitled to judgment upon
the facts found.

Action in the district court for Polk county by Crookston Water-
works, Power & Light Company to recover $12,000 damages for de-

[1]Reported in 98 N. W. 347; 99 N. W. 420.

fendant's negligence in driving certain logs over plaintiff's dam in Red Lake river at Crookston, whereby the dam was partly destroyed and plaintiff's business injured. The case was tried, without a jury, before Watts, J., who found in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed on reargument.

*Rome G. Brown* and *Charles S. Albert,* for appellant.

In the general conduct of their pursuits and in their general uses of this river, both parties were within their rights. The riparian owner has a right to construct, maintain and operate dams upon the rivers of this state, both those that are technically navigable and those that are not. Brisbine v. St. Paul & S. C. R. Co., 23 Minn. 114; Morrill v. St. Anthony Falls W. P. Co., 26 Minn. 222; State v. Minneapolis Mill Co., 26 Minn. 229; Hanford v. St. Paul & D. R. Co., 43 Minn. 104; Minnesota L. & T. Co. v. St. Anthony Falls W. P. Co., 82 Minn. 506; Kretzschmar v. Meehan, 74 Minn. 211, citing Lamprey v. Nelson, 24 Minn. 304.

After the dam owner has provided sluiceways required by statute, for the use of the log driver, then the right of neither the log driver nor the dam owner is paramount to the right of the other. Each is bound to the other simply by the rule of reasonable use; and that rule requires simply that each shall be reasonably accommodating to the other in allowing the use of the stream which the other may require in the reasonable conduct of his pursuits upon the river, and each as against the other, without unreasonable interference. Brisbine v. St. Paul & S. C. R. Co., supra; G. S. 1894, § 2386; Morrill v. St. Anthony Falls W. P. Co., supra; Kretzschmar v. Meehan, supra; Middleton v. Flat River, 27 Mich. 533; Dumont v. Kellogg, 29 Mich. 420, 423; Cary v. Daniels, 8 Metc. (Mass.) 466, 477; Hayes v. Waldron, 44 N. H. 580; Mayor v. Appold, 42 Md. 442, 456; Platt v. Johnson, 15 Johns. 213; Rindge v. Sargent, 64 N. H. 294; Red River R. M. v. Wright, 30 Minn. 253; Pinney v. Luce, 44 Minn. 367; Angell, Watercourses, §§ 541a, 546; Washburn, Easem. § 11, p. 317; Gould, Waters, §§ 95–97; Wood, Nuis. §§ 465, 481, 482; Page v. Mille Lacs Lumber Co., 53 Minn. 492, 500; Lancey v. Clifford, 54 Me. 487, 489; Davis v. Winslow, 51 Me. 264, 291; Veazie v. Dwinel,

50 Me. 479, 487; Foster v. Searsport, 79 Me. 508, 510; Pearson v. Rolfe, 76 Me. 380; Stratton v. Currier, 81 Me. 497; Harrington v. Edwards, 17 Wis. 604, 605; A. C. Conn Co. v. Little Suamico, 74 Wis. 652, 656; White River v. Nelson, 45 Mich. 578, 583; Buchanan v. Grand River, 48 Mich. 364, 366; Pratt v. Brown, 106 Mich. 628, 633; Gulf v. Walker, 132 Ala. 553; Weise v. Smith, 3 Or. 445; Doucette v. Little Falls Imp. & Nav. Co., 71 Minn. 206, 210; Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533, 535; Reeves v. Backus-Brooks Co., 83 Minn. 339, 342; Woodbury v. Day, 24 Minn. 463.

*Koon, Whelan & Bennett,* for respondent.

Assuming said stream was merely floatable, appellant's failure to equip said dam with means and appliances to guide logs into the sluiceways, and to open and furnish appliances for opening the same will bar its recovery herein. 16 Am. & Eng. Enc. (1st Ed.) 242; Gould, Waters, §§ 107, 110; Arundel v. M'Culloch, 10 Mass. 70; Pearson v. Rolfe, 76 Me. 380, 381 (brief of counsel); Knox v. Chaloner, 42 Me. 150; Angell, Watercourses, § 554, note 2; Gniadck v. Northwestern Imp. & B. Co., 73 Minn. 87, 89; In re Minnetonka Lake Imp. Co., 56 Minn. 513; Veazie v. Dwinel, 50 Me. 479, 490. Statutes providing for the erection of drawbridges, or of dams with chutes or locks, over navigable waters, are construed strictly, like all public grants, and in favor of the pre-existing right of navigation. Gould, Waters, § 135; Sutherland, St. Cons. § 366; Hannibal & St. J. R. Co. v. Missouri R. P. Co., 125 U. S. 260.

Appellant in erecting, maintaining and operating said dam violated both its common-law and statutory duty to respondent; Page v. Mille Lacs Lumber Co., 53 Minn. 492; Veazie v. Dwinel, supra.

Appellant in erecting, maintaining and operating said dam was guilty of negligence which will bar its recovery in this action. St. Cloud W. P. & M. Co. v. Mississippi & R. R. Boom Co., 43 Minn. 380; Miller v. Sherry, 65 Wis. 129; Lilley v. Fletcher, 81 Ala. 234; Huff v. Kentucky (Ky.) 45 S. W. 84; Newbold v. Mead, 57 Pa. St. 487, 491; Gates v. Northern, 64 Wis. 64.

Said stream was public and navigable generally at the site of said dam, which was a public nuisance. Respondent had a right to drive

his logs past the same in the manner complained of. The Montello, 20 Wall. 430, 439; Miller v. Mayor of New York, 109 U. S. 385, 395; Escanaba Co. v. Chicago, 107 U. S. 678; Pound v. Turck, 95 U. S. 459; Gould, Waters, §§ 34, 108–110; Olive v. State, 86 Ala. 88; Angell, Watercourses, § 563; Gould, Waters § 121; Cook v. Kendall, 13 Minn. 297 (324); Thornton v. Webb, 13 Minn. 457 (498); Hickok v. Hine, 23 Oh. St. 523; Walker v. Allen, 72 Ala. 456; Wood v. Fowler, 26 Kan. 682; Broadnax v. Baker, 94 N. C. 675; St. Anthony Falls W. P. Co. v. St. Paul W. Commrs., 168 U. S. 349; Lancey v. Clifford, 54 Me. 487; Knox v. Chaloner, 42 Me. 150, 155; Kretzschmar v. Meehan, 74 Minn. 211; Gniadck v. Northwestern Imp. & B. Co., supra; In re Minnetonka Lake Imp., supra; St. Paul, S. & T. F. R. Co. v. First Div. St. P. & Pac. R. Co., 26 Minn. 31; Everson v. City of Waseca, 44 Minn. 247; Wait v. May, 48 Minn. 453; Weaver v. Mississippi & R. R. Boom Co., 28 Minn. 534; School District v. Neil, 36 Kan. 617; 2 Story, Eq. Jur. §§ 920–925; 3 Pomeroy, Eq. Jur. § 1349; Wood, Nuis. (2d Ed.) §§ 824–825, 645–646, 732–741; Bishop Non-Cont. Law, §§ 427–432; Page v. Mille Lacs Lumber Co., supra; Aldrich v. Wetmore, 52 Minn. 164.

LEWIS, J.:

Appellant owned the riparian lands on both sides of the Red Lake river, in Crookston, and a dam constructed at that point. Respondent, a citizen of Winnipeg, on June 6, 1899, owned a large quantity of logs that were collected in the river at a point about five hundred feet above the dam. Respondent opened the boom, and allowed the logs to float down the stream over the dam, without any attempt on his part, and without any effort on the part of appellant, to direct or confine them to the sluiceways. The dam was considerably injured at different places, and this action was brought to recover damages arising therefrom. The court found the damages to be $3,450, but ordered judgment for respondent.

The assignments of error present only one question, viz.: Do the findings of fact justify the conclusion of law and judgment for respondent? If not, do the findings of fact entitle appellant to judgment for the amount of damages found? Appellant submits the case to this court wholly upon these questions of law. The findings are ap-

parently somewhat conflicting, and, in order to properly understand their bearing and relation to the issues in the case, it will be necessary to examine them in some detail:

The court finds:

2, 3. That appellant was the owner of the riparian lands and dam, and of the flowage rights in the stream, and, in connection with its predecessor, had been in exclusive possession thereof for more than fifteen years prior to this action, and ten in connection therewith maintained an electric and power plant.

5, 6, 7. That from 1872 to 1875, Red Lake river, in its natural condition, was capable of being profitably used for transportation and commerce for about two-and-a-half months each season, but that since 1875 it has not been, and could not have been, profitably used for such purposes; that the river has been navigable for the purpose of floating logs and lumber for fifteen years prior to the commencement of this suit, for a distance of more than twenty-five miles above Crookston, as well as below.

9. "That at the time said dam was constructed, and ever since, said dam was provided with sluiceways of sufficient capacity, and so arranged, when one of them is open, as to permit logs, timber, and lumber to pass through the same without any unreasonable delay or hindrance, and that said dam is not, and never has been, an unreasonable obstruction or impediment to the navigation of said river for the purposes of floating logs or lumber when the said sluiceways, or one of them, is open."

11. That about June 6, 1899, respondent did wrongfully drive and allow to be driven a number of about twenty-four thousand logs from a point above said dam to a point below it, and, in driving said logs, did permit and cause them to run in large quantities to and over the dam, and over the crest of the same, instead of through the sluiceways provided for such purposes by appellant, although respondent at that time knew of the sluiceways, and knew that running of said logs over the crest of the dam, instead of through or over the sluiceways, was liable

91 M.—30

to injure the dam and the business of appellant, which acts of respondent in so driving, and allowing the said drive to be made, were done negligently and carelessly, and without reasonable care and prudence on the part of said defendant to prevent unnecessary injuries to the dam and appellant's business.

12. That, by reason of such negligent acts of respondent in so driving and permitting the logs to go over the crest of the dam, it was battered, broken, and weakened, all of which injuries and damages were caused by the negligence of respondent as aforesaid.

13, 14. That the injuries so occasioned by respondent in driving the logs over the dam amounted to $3,450.

15. "That during the month of June, 1899, plaintiff had not facilities for opening said sluiceways, or any of them, when the water was running more than two feet over the crest of the dam, without considerable danger to the lives of those using what plaintiff provided for the purpose of opening the sluiceways, and the said dam was wholly unprovided with any boom, piers, or instruments or means whereby to guide the logs floating in said stream to any sluiceway or channel, and that plaintiff was guilty of negligence in so failing to provide proper facilities for opening said sluiceways, and was guilty of negligence in failing to provide sheer booms, or some means whereby to guide the logs floating in the stream to one or more of the said sluiceways; that at the time defendant drove his logs over said dam as aforesaid, and during all the month of June, 1899, the water of said river was running more than two and a half feet high over the crest of said dam; that one sluiceway in said dam was open one foot at the top, and the other two feet at the top, each sluiceway being eight feet wide and five feet deep from the crest of the dam when fully open and cleared of stop logs; that said openings of one foot in one sluiceway and two feet deep in the other, at the then stage of water, were sufficient to enable defendant to get his logs past the dam by way of the sluiceways, and without any injury to the dam, and, knowing as he did, that plaintiff had not provided any means of guiding the logs to the

sluiceways, he (the defendant) was guilty of negligence in not doing it, and this negligence was a proximate cause of the injury before stated, but plaintiff knew for two weeks before defendant drove his logs past the dam that he was going to do it, and failed to provide sheer booms or other means to guide the logs to the sluiceways, or one of them, and this failure on its part was negligence, which was a proximate cause of the injury, and contributed to it."

Subject to the control of Congress in proper cases, and independently of statute, the right of riparian owners to construct, maintain, and operate dams upon rivers and streams in this state is firmly established by the decisions of this court. Morrill v. St. Anthony Falls W. P. Co., 26 Minn. 222, 2 N. W. 842; State v. Minneapolis Mill Co., 26 Minn. 229, 2 N. W. 839; Kretzschmar v. Meehan, 74 Minn. 211, 77 N. W. 41; Minnesota L. & T. Co. v. St. Anthony Falls W. P. Co., 82 Minn. 505, 85 N. W. 520.

Title 1, c. 32, G. S. 1894, recognizes the interests of riparian owners at the common law, and while declaring all rivers in the state public highways for the purpose of the passage of logs, timber, and lumber, the rights of riparian owners are also recognized and defined. Section 2385 reads:

"All rivers within this state of sufficient size for floating or driving logs, timber or lumber, and which may be used for that purpose, are hereby declared to be public highways, so far as to prevent obstructions to the free passage of logs, timber or lumber down said streams, or either of them." And section 2386: "No dam or boom shall be constructed or permitted on any river, as herein specified, unless said dam or boom has connected therewith a sluiceway, lock or other fixture, sufficient and so arranged as to permit logs, timber and lumber to pass around, through or over said dam or boom, without unreasonable delay or hindrance."

This act applies to all streams generally navigable, as well as what are termed mere floatable streams, and controls the respective rights of interested parties, subject to the acts of Congress and the federal jurisdiction where applicable to streams generally navigable.

Assuming, therefore, that Red Lake river is a navigable stream, it not appearing that Congress has assumed any control over the river, and there being no apparent conflict between the state and federal authority, it does not follow that the dam is a public nuisance because not authorized by federal authority. Gould, Waters (3d Ed.) §§ 129–132; Wilson v. Blackbird Creek M. Co., 2 Pet. 245; State v. Wheeling & B. B. Co., 13 How. 518.

Our view of this legislation is that it was intended to recognize the rights of the riparian owner in the construction of the dam, and the public in the use of the stream, and that neither one is granted a paramount right. The first section declares that all streams of sufficient size to float logs, timber, and lumber are public highways; but the apparently unlimited authority to use such a stream is restricted in the second section by a further statement that the riparian owner may improve the stream for his own use, provided he does not unreasonably hinder or delay the passage of logs, timber, and lumber around, through, or over any dam that is constructed.

In the case before us, appellant was authorized to construct and maintain the dam, provided it was equipped with sluiceways to admit of the passage of logs without unreasonable delay, and respondent was entitled to the use of the stream for the passage of his logs; and, if the sluiceways were so arranged, then respondent was required to direct and drive his logs through the sluiceways, and thus avoid injury to the dam. So it comes down to a question of whether the dam was properly equipped with sluiceways and appurtenances, such as not to unreasonably delay floating logs through the same, and, if so, whether respondent was in the exercise of reasonable care in driving his logs. · While the findings of fact are apparently conflicting, we think that a close examination of the same, when taken into consideration with the conclusion of the court, will show that they are consistent and support the conclusion of law.

The ninth finding of fact is relied upon by appellant as conclusive upon the point that the dam was properly equipped with sluiceways, so as not to unreasonably delay or hinder the passage of logs. We think, when considered with the other findings and the legal conclusion of the court, that it is not so far-reaching. It will be observed from the ninth finding that the court has reference to the construction

of the dam proper, without taking into account any appurtenances for the purpose of directing the logs into the sluiceways. So far as the dam itself is concerned, it is not an obstruction to the passage of logs, because suitable sluiceways were provided, so that, when one or two of the stop boards were out, unreasonable delay was not occasioned to the passage of the logs. It is not to be understood that the finding includes the proper piling or other arrangement necessary for the purpose of guiding logs through the sluiceways. This finding must be considered with that part of the fifteenth to the effect that during the time in question the water running over the dam was more than two feet and a half deep, that there were no facilities for opening the sluiceways without considerable danger, and that the dam was not provided with piers, posts, or other means by which logs might be guided into the sluiceways. These findings are not inconsistent, and, when considered together, mean that appellant constructed the dam with proper sluiceways, but, in failing to provide some means whereby logs might be directed into the sluiceways, their transportation through the same was unreasonably hindered. So much as to appellant's duties.

In the fifteenth finding, it is found that an opening in one of the sluiceways of one, and in the other of two, feet in depth, at the then stage of the water, was sufficient to enable respondent to get his logs past the dam and through the sluiceways without injury to the dam, and knowing, as he did, that appellant had not provided any means of getting the logs into the sluiceways, he was guilty of negligence in not doing so himself. By the eleventh finding, to the same effect, that in running the logs over the crest of the dam, instead of through or over the sluiceways, respondent knew injury was liable to result to the dam, and that such acts were not performed in a careful and prudent manner, and so as to prevent harm to the dam. These findings are relied upon by appellant as sufficient to fix the liability of respondent. If, notwithstanding the fact that appellant had not equipped the dam with proper appurtenances or approaches, yet, knowing the real condition, respondent permitted the logs to go over the crest of the dam, then in the performance of such act he was called upon to exercise reasonable care and prudence to avoid injury to the dam. If the findings referred to are to the effect that, notwithstanding the

failure of appellant to properly equip the sluiceways, yet respondent carelessly and negligently drove his logs over the dam, and unnecessarily caused the injuries complained of, when, with reasonable care and prudence, injury might have been avoided, he would be liable.

But we do not think such is the necessary or proper inference, for there is no evidence to indicate that respondent was not in the exercise of reasonable care. What the court must have had in mind is that if it was the legal duty of respondent to supply sheer booms and direct his logs through the sluiceways, notwithstanding the fact that there were no fixed appurtenances to which booms could be attached, then, in allowing the logs to go over the dam indiscriminately, without any control or direction, he was guilty of negligence. In other words, the trial court assumed the possibility upon this appeal that this court might hold it was the legal duty of respondent to furnish such sheer booms or appliances, and in that case, from the facts found, the conclusion would follow that he was liable for the damages resulting. On the other hand, the court assumed that, if this court should coincide with its view of the law, then the facts found with respect to appellant's duties in the construction of the dam would justify such a conclusion.

We are not aware that there is any decision in this state defining the relative rights of those using a stream as a highway for the transportation of logs, and the riparian owner who has improved the stream for manufacturing purposes; but, as between different riparian owners, the rule is that the parties are limited to a reasonable use, with due regard to the rights and necessities of all others interested. What is a reasonable use depends upon the circumstances of each particular case. See Red River R. M. v. Wright, 30 Minn. 249, 15 N. W. 167. In Page v. Mille Lacs Lumber Co., 53 Minn. 492, 55 N. W. 608, 1119, a controversy arose between different parties engaged in the business of driving logs upon the same stream, and the same rule was applied. With equal reason the rule of reasonable use should apply with respect to the relative rights of appellant and respondent, even in the absence of the statutory declarations already referred to.

According to the evidence and findings of fact, Red Lake river had been used for many years for the transportation of logs. Appellant and its predecessors were required to take notice of the conditions

liable to arise at the period of the year when logs were commonly transported. It is a matter of common knowledge that logs in the northern part of this state are cut and banked upon the streams during the winter season, and in the spring, when the waters are swollen by the melting snow and rains, they are floated to the places of destination. This flood period, during which only it is possible to float logs, exists generally during the months of May and June. When the dam in question was constructed, and the sluiceways put in, the builders were required to anticipate that during the log-driving season the waters would be high, and that during such period the current would be swift over the dam and sluiceways, and that something more might be required than a mere opening, to afford passage for logs without unreasonable delay. Moreover, experience for a number of years should have called appellant's attention to the fact, as found by the court, that, when the water was two and a half feet deep over the crest of the dam, it was an exceedingly difficult and dangerous task to take out the sluice boards sufficiently to lower the water so that the logs would not pass over the dam, and difficult, if at all feasible, to fix sheer booms for the purpose of directing the logs through the sluiceways. Under those conditions, it was practically impossible for respondent, without great inconvenience and delay, to attach sheer booms or take out enough of the sluice boards; and having called upon appellant, as the findings disclose, to make preparation for the passage of the logs, respondent did all that was reasonably required of him to do under the circumstances. It might be that at a lower stage of the water, or under other conditions, the dam, as constructed, would be sufficient to meet the requirements.

We do not intend to hold that under all circumstances it is the duty of the riparian owner who erects a dam to provide sheer booms and to keep them in place, or that he is required to assume control of the logs, and conduct them through the sluiceways. It is simply held that, under the facts in this case, the dam should have been equipped with piling, or permanent fixtures of some kind, which could be reached, and to which sheer booms could be attached by respondent, or some means should have been provided for removing the sluice boards so that the current of water through the sluiceways would be

sufficient to draw the logs through the same, or some other provision made equally efficient to accomplish the purpose..

We have not overlooked the case of St. Cloud W. P. & M. Co. v. Mississippi & R. R. Boom Co., 43 Minn. 380, 45 N. W. 714. In that case an act of Congress was construed, and the rule of reasonable use was not taken into consideration.

Judgment affirmed.

Upon reargument the following opinion was filed May 13, 1904:

PER CURIAM.

A rehearing was ordered in this case upon the following questions:

1. Did the trial court in holding by the eleventh finding of fact that respondent wrongfully and negligently drove the logs over the crest of the dam, instead of through the sluiceways, have reference to the condition of the dam, sluiceways, and depth of the water as then existing, or did the court have in mind the neglect of respondent to furnish sheer booms, conceding it to be his duty to furnish them?

2. Is there sufficient evidence in the case to sustain the eleventh finding of fact?

3. If the eleventh finding of fact refers to the condition of the dam at the time the logs were driven over it, was respondent liable for the resulting injury?

The matter having been fully reargued, it is ordered that the former order of this court affirming the judgment be, and the same hereby is, set aside, and a new trial granted.

It will not be advisable at this time to further discuss the principles of law involved in this case. The appeal having been taken upon the ground that the findings of fact did not justify the order for judgment, the court endeavored to reconcile what it deemed to be rather indefinite and inconsistent findings. From a re-examination of the evidence and findings, we are now satisfied that the task the court assumed at that time was hardly justified, and we have concluded to remand the case for a new trial upon the ground that the findings of fact do not support the order for judgment, and do not justify an order for judgment for appellant.